BROWN GAVALAS & FROMM LLP
Attorneys for Plaintiffs
CRUISER SHIPPING PTE LTD. and
UNIVERSAL NAVIGATION PTE LTD.
355 Lexington Avenue
New York, New York 10017
212-983-8500



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

CRUISER SHIPPING PTE LTD. and
UNIVERSAL NAVIGATION PTE LTD.,

07 CV

                    Plaintiffs,

**VERIFIED COMPLAINT**

          -against-

SUNDERSONS LTD. and MILAN NIGERIA
LTD.,

                    Defendants.

------------------------------------------------------------X

**07 CIV 4036**

RECEIVED
MAY 23 2007
U.S.D.C. S.D. N.Y.
CASHIERS

        Plaintiffs, CRUISER SHIPPING PTE LTD. ("Cruiser") and UNIVERSAL

NAVIGATION PTE LTD. ("Universal," and hereinafter with Cruiser, the "Plaintiffs"), by their

attorneys, Brown Gavalas & Fromm LLP, as and for their Verified Complaint against

Defendants, SUNDERSONS LTD. ("Sundersons") and MILAN NIGERIA LTD. ("Milan

Nigeria" and hereinafter with Sundersons, the "Defendants"), allege upon information and belief

as follows:

        1.     This is a case of admiralty and maritime jurisdiction, as hereinafter more fully

appears, and is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal

Rules of Civil Procedure. The Court has jurisdiction under 28 U.S.C. § 1333.

        2.     At all material times, plaintiff, Cruiser was, and now is, a foreign corporation with

an office and place of business at 3 Shenton Way, 11-04 Shenton House, Singapore, 068805 and was the registered owner of the motor vessel CRUISER ("the Vessel")

3.  At all material times, plaintiff, Universal, was and now is a foreign corporation with an office and place of business at 3 Shenton Way, 11-04 Shenton House, Singapore, 068805, and was the disponent owner of the Vessel.

4.  Upon information and belief, at all material times, defendant, Sundersons, was and now is a foreign corporation with an office and place of business at 52a Kofo Abayomi Street, Victoria Island, Lagos, Nigeria.

5.  Upon information and belief, at all material times, defendant, Milan Nigeria, was and now is a foreign corporation with an office and place of business at 243 Kofo Abayomi Street, Victoria Island, Lagos, Nigeria.

6.  On or about August 4, 2006, a charter party agreement was entered into by and between plaintiff, Universal, and defendant, Sundersons, whereby Universal agreed to let, and Sundersons, as charterer, agreed to hire the M/V CRUISER for a voyage, under certain terms and conditions, from Kakinada Port, India to Port Harcourt, Nigeria ("Charter Agreement"). On or about August 30, 2006, September 9, 2006 and September 12, 2006, plaintiff Cruiser issued twenty bills of lading, Nos. C1 to 20, with respect to cargo transported aboard the Vessel.

7.  At all relevant times, defendant Milan was the receiver and/or consignee of the cargo evidenced by said bills of lading. The said bills of lading incorporated all of the terms of the Charter Agreement, including the arbitration clause therein and are therefore subject to the same arbitration clause.

8.  Clause 50 of the Charter Agreement contains a London arbitration clause which provides :

2

"Should any dispute arise between Owners and Charterers, the matter in dispute shall be referred to three (3) persons in London, one to be appointed by each of the parties hereto and the third by the two so chosen: their decision or that of any two of them shall be final and for the purpose of enforcing any award, this agreement may be a rule of the court. The Arbitrators shall be commercial men."

9.   On October 19, 2006, the Vessel arrived at the first discharge port, Lagos, Nigeria and on November 6, 2006, the Vessel arrived at the second discharge port, Port Harcourt, Nigeria, incurring total discharge port demurrage, payable by Defendants, of $36,755.56.

10.  At Port Harcourt, the Defendants claimed damage to the cargo discharged at Port Harcourt and prevented the departure of the Vessel by blocking the necessary clearances. In addition, on December 6, 2006, Defendants caused the judicial arrest of the Vessel in Port Harcourt and, without authority from the Court in Port Harcourt or from the Plaintiffs, placed heavily armed men on board the Vessel, effectively holding the Vessel and crew to ransom.

11.  With the Vessel now detained and subject to judicial arrest, Defendants demanded payment of $198,987.60 on grounds of alleged cargo shortage, despite the fact that figures from the master indicated that there was no shortage claim when the quantity of cargo discharged in Port Harcourt was compared to the quantity on the cargo manifest; i.e. the quantity placed on board the Vessel at loading.

12.  Plaintiffs made various offers to obtain a release of the Vessel pending adjudication, on the merits of the alleged cargo claim, including an offer to post a guarantee letter from Plaintiffs' insurer. Such guarantee letters are routinely offered and accepted in international shipping transactions and are considered good and acceptable security for claims.

13.  Despite Plaintiffs' repeated and reasonable efforts, Defendants refused to accept

security in substitution of the continued detention of the Vessel and demanded resolution of the parties' dispute in Nigeria, in breach of the Defendants' obligation to submit all disputes between the parties to arbitration in London.

14. With the Vessel remaining under arrest and detention by Defendants, and in further breach of the binding London arbitration clause, Defendants refused to release the Vessel in substitution for comparable security and demanded payment of $70,000, to be made into a Swiss bank account, and the written agreement of the Plaintiffs to forgo their claims against Defendants, including claims for demurrage, in return for the release of the Vessel.

15. Plaintiffs' payment of $70,000 to Defendants was made under both economic and physical duress, and was procured due to Defendants' breach of the Charter Agreement in detaining the Vessel in Nigeria and seeking to compel Plaintiffs' to forego their rights under the Charter Agreement and applicable law.

16. Defendants' attempt to pursue their claims against Plaintiffs outside London, and their attempts to compel the Plaintiffs to agree to Nigerian jurisdiction or to pay the alleged claim, constitute a breach of contract, economic duress and oppressive and/or vexatious and/or bad faith conduct because:

> a. the Plaintiffs and their insurers have offered to secure Defendants' alleged claims with a Club Guarantee with English law and arbitration; and
>
> b. the sole purpose of the arrest and the Defendants' refusal to negotiate release of the Vessel against comparable substitute security was intended to compel and coerce Plaintiffs, under extreme economic duress, to agree to Nigerian jurisdiction and law or into paying Defendants' claim by way of settlement.

17. Clause 54 of the Charter Agreement provides as follows:

4

"In the event of any alleged cargo claim/shortages Charterers/Receivers are to accept Owners' Pandi Club Letter of Guarantee/bond only. No cash settlement to be allowed whatsoever. Owners Pandi Club is South of England.

If vessel is not released then immediately vessel goes on detention at USD12,000 per day pro rata plus costs of bunkers consumed and any other directly related costs until vessel is released."

A copy of the Charter Agreement is attached hereto as Exhibit "A."

18. Plaintiffs have incurred costs and losses as a result of the detention of the Vessel and the breaches of the Charter Agreement on the part of Defendants, their servants and agents, including load port and discharge port demurrage, detention charges, bunkers consumed during the detention period, daily running expenses and earning losses, in an amount of $311,650.00, as best as can be determined at the present time.

19. In accordance with a binding arbitration clause in the Charter Agreement and in the bills of lading, Plaintiffs will commence arbitration proceedings in London, England.

20. This action is in aid of said arbitration proceedings, as aforesaid, in accordance with 9 U.S.C. § 8. Plaintiffs seek to obtain adequate security to satisfy a potential London arbitration award in Plaintiffs' favor.

21. Plaintiffs sue on their own behalf, and as agents and trustees on behalf of any other persons or parties who may now have, or hereinafter acquire, an interest in this action.

22. Insofar as legal costs and attorneys' fees are routinely awarded to the prevailing party in London arbitration proceedings, Plaintiffs also seek to secure claims for interest and anticipated legal costs and attorneys fees. As best as can now be estimated, Plaintiffs expect to recover the following amounts in the London arbitration:

| | | |
|---|---|---|
| a. | On the principal claim | $311,650.00 |
| b. | Interest at 6% per annum, compounded quarterly for 3 years | $ 60,964.40 |

c.     Costs
(arbitrators' fees, attorneys' fees, etc.)     $ 45,000.00

    TOTAL     $417,614.40

23. Upon information and belief, Defendants cannot be found within the District, within the meaning of Supplemental Rule B of the Federal Rules Civil Procedure, but are believed to have or will have during the pendency of this action assets within this District, specifically including cash, funds, freight, hire, accounts and other property, in the hands of garnishees in the District including but not limited to American Express Bank, Ltd.; ABN-AMRO Bank; Mashreq Bank; Standard Chartered PLC; Bank of America; BNP New York; Bank of New York; J.P. Morgan Chase; Citibank, Bank of China and Wachovia Bank, which are believed to be due and owing to the Defendant.

WHEREFORE Plaintiffs pray:

A. That process in due form of law according to the practice of this Court in admiralty and maritime jurisdiction issue against the Defendants, citing them to appear and answer under oath all and singular the matters alleged in the Verified Complaint;

B. That since the Defendants cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of the Court to issue Process of Attachment and Garnishment, pursuant to Rule B of the Supplemental Admiralty Rules and the United States Arbitration Act, 9 U.S.C §§ 1 and 8, attaching all cash, goods, chattels, letters of credit, bills of lading, effects, debts and monies, tangible or intangible, or any other funds held by any garnishee, including American Express Bank, Ltd.; ABN-AMRO Bank; Mashreq Bank; Standard Chartered PLC; Bank of America; BNP New York; Bank of New York; J.P. Morgan Chase; Citibank, Bank of China and

6

Wachovia Bank, which are due and owing to the Defendants, in the amount of $417,614.40, to secure the Plaintiffs' claim, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged;

C. That this action be stayed and this Court retain jurisdiction over this matter through the entry of any judgment or award, and any appeals thereof; and

D. That Plaintiffs have such other, further and different relief as this Court may deem just and proper.

Dated: New York, New York
      May 23, 2007

                    BROWN GAVALAS & FROMM LLP
                    Attorneys for Plaintiffs
                    CRUISER SHIPPING PTE LTD. and
                    UNIVERSAL NAVIGATION PTE LTD.

By: _____

                    Peter Skoufalos (PS-0105)
                    355 Lexington Avenue
                    New York, New York 10017
                    212-983-8500

## VERIFICATION

STATE OF NEW YORK )
                   : ss.:
COUNTY OF NEW YORK )

    PETER SKOUFALOS, being duly sworn, deposes and says:

    1.    I am a member of the bar of this Honorable Court and of the firm of Brown

Gavalas & Fromm LLP, attorneys for Plaintiff.

    2.    I have read the foregoing Verified Complaint and I believe the contents thereof

are true.

    3.    The reason this Verification is made by deponent and not by Plaintiffs is that

Plaintiffs are foreign corporation, no officer or director of which is within this jurisdiction.

    4.    The sources of my information and belief are documents provided to me and

statements made to me by representatives of the Plaintiff.

PETER SKOUFALOS

Sworn to before me this
23rd day of May, 2007

Notary Public

DONALD P. BLYDENBURGH
Notary Public, State of New York
No. 01BL6085999
Qualified in Suffolk County
Term Expires March 16, 20__

8