# EXHIBIT A

# CONTINENT GRAIN CHARTERPARTY
## Code name: "SYNACOMEX 2000"

Adopted PARIS 1987 by SYNDICAT NATIONAL DU COMMERCE EXTERIEUR DES CEREALES
amended 1990, 1974,1999 and 2000 in agreement with COMITE CENTRAL DES ARMATEURS DE FRANCE
in cooperation with Chambre Arbitrale Maritime de Paris and the French Chartering and S. & P. Brokers' Association

**ORIGINAL**

PART I

| | |
|---|---|
| 1. Shipbroker(s)<br>Anglomar Shipping Ltd., London | 2. Place and date of Charter Party<br>London 04th AUGUST 2006 |
| 3. Owners and place or business (state full style and address) (Cl. 1)<br>Universal Navigation<br><br>as Disponent Owners | 4. Charterers and place of business (state full style and address) (Cl. 1)<br>Sundersons Nigeria, Ltd. |
| 5. Vessel's name (Cl. 1) mv CRUISER<br><br>flag / built / class: Panama 1982 Hellenic<br><br>NT / GT: 15,904/8,834<br><br>summer DWT: See Clause 29 | 6. First layday date (Cl. 6) 12th August 2006<br><br>Cancelling date (Cl. 6) 22nd August 2006<br><br>7. Present position / expected ready to load (Cl. 1)<br>trading |
| 8. Loading port(s) (Cl. 2)<br>Kakinada<br><br>a) Always afloat (*)  b) "safely aground" (*) | 9. Advance notices (Cl. 7)<br><br>- at load port to: |
| 10. Discharging port(s) (Cl. 3)<br>1 safe berth Lagos plus 1 sb Port Harcourt<br><br>a) Always afloat (*)  b) "safely aground" (*) | -at discharging port: number of days / to: 7 |
| 11. Cargo nature and quantities (Cl. 2)<br><br>a) No bags (*)  b) Maximum in bags for sewage (*) | 12. Freight rate (Cl. 4)<br>USD 60.00 per metric ton free in and out free stowed<br>basis 1 load/ 2 discharge |
| 13. Freight rate payment (state currency and method of payment, beneficiary<br>and bank account) (Cl. 4)<br>See Clause 47 | 14. Loading rate (Cl. 5)<br>3000 metric tons pwwd shex . See also Clause 6 |
| | 15. Discharging rate (Cl. 5)<br>1000 metric tons pwwd sshcx. See also Clause 8. |
| | 16. Demurrage / Despatch money (Cl. 5)<br>USD 5,000 pdpr / hdwtabe |
| 17. Agents at loading port(s) (Cl. 13)<br>See Clause 52 | 18. Agents at discharging port(s) (Cl. 13)<br>See Clause 52 |
| 19. Extra insurance, maximum (Cl. 14) | 20. Brokerage commission and to whom payable (Cl. 15)<br>1.25% to Anglomar Shipping Ltd. to be deducted from freight |
| 21. Address Commission (Cl. 15)<br>2.5% to Charterers to be deducted from freight | a) Deductible (*)  b) Non-deductible (*) |
| 22. Numbers of the additional clauses covering special provisions, if any agreed<br>Additional clauses from clause 29 to clause 68 are deemed to be incorporated to this Charter Party | |

It is mutually agreed that this Charter Party shall be performed subject to the conditions contained herein consisting of PART I and PART II including additional clauses if any agreed and stated in Box 22. In the event of a conflict of conditions, the provisions of PART I shall prevail over those of PART II to the extent of such conflict but no further. **(PTE) LTD**

| For the Owners | For the Charterers |
|---|---|
| | |

(*) Delete as appropriate, if not deleted, alternative a) to apply.

This document is a computer generated SYNACOMEX 2000 form printed by authority of SYNDICAT NATIONAL DU COMMERCE EXTERIEUR DES CEREALES (SYNACOMEX). Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original SYNACOMEX document shall reign. BIMCO and SYNACOMEX assume no responsibility for any loss, damage or expense as a result of discrepancies between the original SYNACOMEX document and this computer generated document.

Approved by
The Documentary Committee of
The Baltic and International Maritime Council (BIMCO)

Printed by BIMCO's idea

Copyright published by
SYNACOMEX and COMITE CENTRAL DES ARMATEURS DE FRANCE

**ORIGINAL**

## PART II
## "SYNACOMEX 2000" Continent Grain Charterparty

**1. Owners, Charterers**   1
It is this day agreed between the party designated in Box 3,   2
Owners of the Vessel named and described in Box 5, being   3
now in position and expected ready to load as mentioned in   4
Box 7, , and the party designated in Box 4 as Charterers, THAT   5

**2. Loading Port(s) and Cargo**   6
The said Vessel being tight, staunch and in every fit for   7
the voyage, shall with all convenient speed proceed to the   8
place designated in Box 1, which in case of named port(s).   9
1 safe berth / safe anchorage Kakinada
Owners acknowledge as safe and suitable for this Vessel   10
and there load always afloat, unless ~safely aground~ nae   11
been specifically agreed in Box 6, in such safe berth, dock,   12
wharf or anchorage as Charterers or their Agents or   13
Shippers may direct a full-and complete cargo 23,00044,750 metric   14
tons 46,000 metric tons min/max/umsum of bagged Rice. Exact
quantity as per actual stowage factor which Charterers advise but
do not guarantee as 51'. To be declared seven days prior arrival
at load port of ~whbe~
and/or ~make and/or~ yo and/or party or described in Box-   15
55 in metric tons (5 % more or less in Owners' option) in both.   16
Shippers have the ~option at~ using a decided safe berth. The   17
time for shifting between the two ports shall count as   18
laytime, but shifting expenses shall be for Vessel's account.   19
Owners shall provide and install at their risk and expense   20
and on their time all that is required for safe stowage of   21
grain according to local and international regulations.   22
The cargo shall not exceed what the Vessel can reasonably   23
stow and carry over and above her bunkers, apparel, stores...   24
provisions and accommodation. The whole cargo shall be   25
carried and stowed under deck in unobstructed main holds.   25
All cargo on board to be delivered.   27
Furthermore, if stowage bags have been specifically agreed-   28
the following shall apply:   29
Charterers shall supply for stowage purposes a quantity of   30
bagged cargo not exceeding the quantity specified in Box   31
53 which shall be stowed at their risk and expense. The   32
number of bags signed for on Bills of Lading to be binding   33
on Vessel and Owners, unless error or fraud be proved.   34

**3. Discharging Port(s)**   35
Being so loaded, the Vessel shall proceed with all convenient   36
speed direct to the place designated in Box 10, 1 safe berth Lagos   37
including Tincan island plus 1 safe berth Port harcourt in
Charterers' option, Charterers advise that min draft in Lagos 9.5
meters salt water which in
case of named port(s) Owners acknowledge as safe and   38
suitable for this Vessel, and there discharge the cargo   39
always afloat, unless "safely aground" has been specifically   40
agreed in Box 10, in such safe berth, dock, wharf or   41
anchorage as Charterers or their Agents or Receivers may   42
direct. Receivers have the option of using a second safe   43
berth. The time for shifting between the two berths shall   44
count as laytime, but shifting expenses shall be for Vessel's   45
account.   46

**4. Freight**   47
The freight agreed under this Charter Party shall be as   48
stated in Box 12, per metric ton on net Bill of Lading weight   49
and shall be deemed earned as cargo is loaded on board,   50
prepaid discountless and non-returnable, Vessel and/or   51
cargo lost or not lost   52
The freight shall be paid as per Clause 47- as specified in Box 12.   53
All charges and dues levied on the cargo shall be for   54
Charterers' account and those levied on the Vessel   55
howsoever assessed shall be for Owners' account.   56

**5. Loading and Discharging**   57
Cargo shall be loaded, spout-trimmed and/or stowed at the   58
rate and expense of Shippers/Charterers at the average   59
rate stated in Box 14, +15003020000/1000 metric tons per weather   60
working day basis vessel's gear as described Sundays and
Holidays excluded. See also Clause 8 weather permitting-

Cargo shall be discharged at the risk and expense of   61
Receivers/Charterers at the average rate stated in Box 15, 1000   62
metric tons per weather working day basis vessel's gear as
described Saturdays, Sundays and Holidays excluded. See also
Clause 8.
weather permitting.   63
Stowage shall be under Master's direction and res-   64
ponsibility, Shippers' and/or Charterers' representatives   --
have the right to be on board the Vessel during loading.   65
discharging or lightering for the purpose of inspecting the   67
cargo and/or weighing. Charterers and Owners are allowed   68
to work overtime, such expenses shall be for account of   69
the party ordering same. If ordered by Port Authorities,   70
overtime shall be for Charterers' account. Overtime services   71
rendered by ship's crew shall be in all cases for Owners'   72
account.   73

**6. Laydays, Cancelling**   74
At port of loading laytime shall not count before 00.00 hours   75
on the layday date stated in Box 6 and in any case not   76
Before the date notified by the 10 days notice as per Clause 7   77
Should the Vessel's notice of readiness not be validly   78
tendered as per Clause 8 before 00.00 hours on the   79
cancelling date stated in Box 6, Charterers shall have the   80
Option of cancelling this charter at any time thereafter, but   81
not later than one hour after the notice is validly tendered.   82

**7. Vessel's Positions , Notices**   83
Master and/or Owners shall give 10 days and thereafter 5/4/3/2/1   84
days and 12 hours notice of Vessel's expected readiness to load to   55
the
party designated in Box 9   86
Master and/or Owners shall give7/6/4/3/2/1 days  notice of Vessel's   87
Expected Time of Arrival (ETA) at discharging port an   88
specified in Box 9 (to be advised)   89
Master and/or Owners shall give the relevant parties prompt   90
Advice of any substantial change in Vessel's ETA at loading   91
and at discharging ports   92

**8. Laytime**   93
Vessel's written notice of readiness to load and/or discharge   93
shall be tendered by hand or by any means of tele-   93
communication at the offices of Shippers/Charterers/   9u
Receivers or their Agents  Monday through Friday, between 09.00   97
and 17.00 hours
on all days except Saturdays, Sundays and Holidays and   98
between 08.00 hours and 12.00 hours on Saturdays unless   99
a Holiday Saturday 12.00 hours on Monday 0800 hrs EIU clause   100
to apply both ends
. Such notice of readiness shall be delivered when  
Vessel is in the loading or discharging berth and in all   101
respects ready to load/discharge. At both ends if the berth is   102
congested/ unreachable Master has the right to tender N.O.R from
the anchorage even by cable/tix/fax/email and time to count
whether in berth or not, whether in port or not, whether free
pratique or not, whether customs cleared or not. At loading port
Shippers/
Charterers or their Agents have the privilege to inspect   103
Vessel's holds .If it requested by Charterers, a survey may be   104
carried out at their time and risk to establish vessel's holds and
hatch covers suitability to load bagged rice and Owners to have
the right to be represented during such survey by their P&I
Surveyors. and reject the notice when holds are not
clean, dry, odourless and in all respects ready to receive   105
the cargo.   106
In case of disagreement between the two surveyors then an
independent surveyor (mutually agreed between Charterers' and
the Owners P&I surveyor) to be appointed whose findings to be
binding for both parties. In case any deficiency, then same to be
promptly made good by the Owners and any time lost from the
time of rejection till the time of acceptance not to count as laytime.
in case of dispute an independent surveyor shall decide   107
about Vessel's readiness to load, the party in the wrong   108
bearing the costs. If the rejection of notice of readiness is   109
undisputed or confirmed by surveyor the laytime will only   11u
start to count after the Vessel has validly tendered again   111

This document is a computer generated SYNACOMEX 2000 form printed by authority of SYNDICAT NATIONAL DU COMMERCE EXTERIEUR DES CEREALES (SYNACOMEX). Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original SYNACOMEX document shall apply. BIMCO and SYNACOMEX assume no responsibility for any loss, damage or expense as a result of discrepancies between the original SYNACOMEX document and this computer generated document.

04-APR-2007 17:46  FROM JACKSON PARTON

ORIGINAL'

## PART II
## "SYNACOMEX 2000" Continent Grain Charterparty

when ready. 112
Only when the loading and/or discharging berth is 113
unavailable, or Shippers or Receivers not ready to load/ 114
discharge Master may warrant that the Vessel is in all
respects ready and may tender notice of readiness to load 115
and/or discharge from any usual waiting place, whether in 116
port or not, whether in berth or not, whether in free pratique or not, 117
whether customs
cleared or not. 118
Laytime shall commence at 44.00-13.00 hours if notice of 119
readiness to load and/or discharge is validly tendered at or 120
before 12.00 hours and at 08.00 hours on the next working 121
day if notice of readiness is validly tendered after 12.00 122
hours. Time used before commencement of laytime shall 123
not count. At loading port Laytime shall not count between 12.00 124
hours on
Saturdays or 17 12.00 hours on days proceding a Holiday and 125
08.00 hours on Monday or the following working day, even if used. 126
At discharging port(s) laytime shall not count between 17.00
hours on Friday or 17.00 hours on the day preceding Holiday and
08.00 hours on Monday or the following working day, even if used.

~~unless used in~~
~~which case half time actually used shall count.~~ 127
~~Any delays caused by ice, floods, quarantine, or by cases~~ 128
~~of "force majeure" shall not count as laytime unless the~~ 129
Any delays caused by ice, floods, quarantine, or cases of "force 130
majeure" shall not count as laytime unless
Vessel is already on demurrage. Once on demurrage always on
demurrage but Charter Party exceptions always to apply (ie gear
breakdown/ crew and/ or officers strike, failure to pay any
disbursement accounts for Owners' account etc.
When Master has tendered notice of readiness to load or 131
discharge from a waiting place and Vessel is subsequently 132
found unready in application of the above provisions, laytime 133
or time on demurrage shall not count from the time the Vessel 134
is rejected until the time she is accepted. Additionally, any 135
actual time lost on account of Vessel's obtaining free pratique 136
or customs clearance shall not count as laytime or time on 137
demurrage. 138
At second or subsequent port(s) of loading or discharging, 139
laytime or time on demurrage shall resume counting from 140
Vessel's arrival at loading or discharging berth, if available, 141
or from Vessel's arrival at a usual waiting place, if berth is 142
unavailable. 143
At all ports any time lost shifting from waiting place to berth 144
shall not count as laytime or as time on demurrage. 145

## 9. Demurrage, Despatch Money
Demurrage is payable by Charterers at the rate stated in 146
Box 18 USD 8,000 per day pro rata half despatch laytime saved 147
both ends per day of 24 consecutive hours or pro rata. 148
~~Owners shall pay to Charterers despatch money for laytime~~ 149
~~saved in loading/discharging at the rate stated in Box 16~~ 150
~~per day of 24 consecutive hours or pro rata.~~ 151

## 10. Seaworthy Trim
If ordered to be loaded or discharged at more than one 152
berth and/or port, the Vessel is to be left in seaworthy trim 153
to Masters reasonable satisfaction for the passage between 154
berths and/or ports at Shippers'/Charterers'/Receivers' 155
expense, and time used for placing Vessel in seaworthy 156
trim shall count as laytime or time on demurrage. 157
158

## 11. Fumigation See Clause 57
~~Charterers have the liberty to fumigate the cargo on board~~ 159
~~at loading and discharging port(s) or places on route at~~ 160
~~their risk and expense. Charterers are responsible for~~ 161
~~ensuring that Officers and Crew as well as all other persons~~ 162
~~on board the Vessel during and after the fumigation are not~~ 163
~~exposed to any health hazards whatsoever. Charterers~~ 164
~~undertake to pay Owners all necessary expenses incurred~~ 165
~~because of the fumigation and time lost thereby shall count~~ 166

~~as laytime or time on demurrage. When fumigation has~~ 167
~~been effected at loading port and has been certified by~~ 168
~~proper survey or by a competent authority, Bills of Lading~~ 169
~~shall not be claused by Master for reason of insects having~~ 170
~~been detected in the cargo prior to such fumigation.~~ 171
172

## 12. Lights and Gear
Whenever required, Vessel shall supply free use of lights 173
as on board but sufficient to carry on night work. 174
Provided described as geared, Vessel, whenever required, 175
shall supply free use of all cargo handling gear on board, in 176
good working order, with the necessary power, and of 177
runners, ropes and slings as on board. Shore hands shall 178
be used to drive the gear, at Shippers'/Charterers'/ 179
Receivers' account. Any time actually lost on account of 180
breakdown of Vessel's gear shall not count as laytime or 181
time on demurrage and any stevedore standby time charge 182
incurred thereby shall be for Owners' account. The Gear's / Crane's 183
breakdown than laytime not to count but always on prorata basis. 184

## 13. Agencies
At loading port, Vessel shall be consigned to the Agents 185
designated in Box 42. See Clause 52 186
At discharging port, Vessel shall be consigned to the Agents 187
designated in Box 19. See Clause 52 188
189

## 14. Extra Insurance
Any Extra Insurance on cargo due to Vessel's age and/or flag 190
and/or class and/or ownership shall be for Charterers' account 191
~~Owners' recount but limited to the~~ 192
~~amount specified in Box 19 such extra insurance shall be~~ 193
~~covered by Charterers for Owners' account and shall be~~ 194
~~deducted from settlement of freight.~~ 195

## 15. Brokerage
A brokerage commission as stated in Box 20 on the gross 196
amount of freight, deadfreight and demurrage earned, is 197
due to the party(ies) designated in Box 20 and is deductible 198
from same unless "non-deductible" has been specifically 199
agreed. 200
201

## 16. Address Commission
An address commission as stated in Box 21 on the gross 202
amount of freight, deadfreight and demurrage earned is 203
due to Charterers and is deductible from freight, deadfreight 204
and demurrage. 205
206

## 17. ISM Clause
From the date of coming into force of the International Safety 207
Management (ISM) Code in relation to the Vessel and 208
thereafter during the currency of this Charter Party, the 209
Owners shall procure that both the Vessel and "the 210
Company" (as defined by the ISM Code) shall comply with 211
the requirements of the ISM Code. Upon request the 212
Owners shall provide a copy of the relevant Document of 213
Compliance (DOC) and Safety Management Certificate 214
(SMC) to the Charterers. 215
Except as otherwise provided in this Charter Party, loss, 216
damage, expense or delay caused by failure on the part of 217
the Owners or "the Company" to comply with the ISM Code 218
shall be for the Owners' account. 219
220

## 18. Bills of Lading
The Master is to sign Bills of Lading as presented without 221
prejudice to the terms, conditions and exceptions of this 222
Charter Party. If the Master delegates the signing of Bills of 223
Lading to his Agents, but always to be in a strict conformity with 224
Master's Receipts he shall give them authority to do so 225
in writing, copy of which is to be furnished to Charterers. 226
When Bills of Lading marked "Freight prepaid" are required, 227
See clause 47.
Bills shall be released by Owners immediately upon receipt 228

This document is a computer generated SYNACOMEX 2000 form printed by authority of SYNDICAT NATIONAL DU COMMERCE EXTERIEUR DES CEREALES (SYNACOMEX). Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original SYNACOMEX document shall apply. IMACO and SYNACOMEX assume no responsibility for any loss, damage or expense as a result of discrepancies between the original SYNACOMEX document and this computer generated document.

Case 1:07-cv-04036-JGK    Document 1-2    Filed 05/23/2007    Page 5 of 75/83
04-APR-2007  17:47   FROM  JACKSON PARTON      FAX NO.                           DEC.  03  2000  14:14

FROM .

# ORIGINAL

## PART II
## "SYNACOMEX 2000" Continent Grain Charterparty

of-a-roles-from Chartorors/-Bank-confirming-that-freight | 220
payable-has-been-irrevocably-transferred. | 230

**19. Relet** | 231
Chartorers-have-the-right-to-relet-all-or-part-of-this-Charter | 232
Party,-they-remaining-responsible-for-its-due-fulfilment- | 233

**20. Deviation** | 234
Deviation in saving or attempting to save life or property at | 235
sea or for bunkering purposes or any other reasonable | 236
deviation shall not be deemed an infringement of this | 237
Charter Party and the Owners shall not be liable for any | 238
loss or damage resulting therefrom. | 239

**21. Lien Clause** | 240
The Owners shall have a lien on the cargo for freight, | 241
deadfreight, demurrage, and average contribution due to | 242
them under this Charter Party. | 243

**22. Responsibilities and Immunities** | 244
Except as otherwise provided and stipulated in this Charter | 245
Party, it is hereby expressly agreed that this Charter Party | 246
shall have effect subject to the provisions of the Hague Rules | 247
contained in the International Convention for the Unification | 248
of certain rules relating to Bills of Lading, dated Brussels | 249
the 25th August 1924, as enacted in the country of shipment. | 250
These rules shall apply to any Bill of Lading issued under | 251
this Charter Party. | 252
When no such enactment is in force in the country of | 253
shipment, the corresponding legislation of the country of | 254
destination shall apply, but in respect of shipments to which | 255
no such enactments are compulsorily applicable, the terms | 256
of the said Convention shall apply. | 257
In trades where the International Brussels Convention 1924 | 258
as amended by the Protocol signed at Brussels on February | 259
23rd, 1968 - The Hague - Visby Rules - apply compulsorily, | 260
the provisions of the respective legislation shall apply. | 261
The Owners shall in no case be responsible for loss of or | 282
damage to cargo howsoever arising prior to loading into | 283
and after discharge from the Vessel. | 264
Save to the extent otherwise in this Charter Party expressly | 285
provided, neither party shall be responsible for any loss or | 266
damage or delay or failure in performance howsoever | 267
resulting from Act of God, war, civil commotion, quarantine, | 286
strikes, lockouts, arrest or restraint of princes, rulers and | 288
peoples or any other event whatsoever which cannot be | 270
avoided or guarded against. | 271

**23. Amended General Ice Clause** | 272
Port of Loading | 273
a) In the event of the loading port being inaccessible by | 274
reason of ice when Vessel is ready to proceed from her last | 275
port or at any time during the voyage or on Vessel's arrival | 276
or in case frost sets in after Vessel's arrival, the Master for | 277
fear of being frozen in is at liberty to leave without cargo, | 278
and this Charter Party shall be null and void. | 279
b) If during the loading the Master, for fear of Vessel being | 280
frozen in, deems it advisable to leave, he has liberty to do | 2c1
so with what cargo he has on board and to proceed to any | 282
other port or ports with option of completing cargo for | 283
Owner's benefit to any port or ports including port of | 284
discharge. Any part cargo thus loaded under this Charter | 285
Party to be forwarded to destination at Vessel's expense | 286
but against payment of freight, provided that no extra | 287
expenses be thereby caused to the Receivers, freight being | 288
paid on quantity delivered (in proportion if lumpsum), all | 289
other conditions as per Charter Party. | 290
c) In case of more than one loading port, and if one or more | 291
of the ports are closed by ice, the Master or Owners to be | 292
at liberty either to load the part cargo at the open port and | 293

fill up elsewhere for their own account as under section b) | 294
or to declare this Charter Party null and void unless | 295
Charterers agree to load full cargo at the open port. | 296
Port of Discharge | 297
a) Should ice prevent Vessel from reaching port of | 298
discharge, Receivers shall have the option of keeping Vessel | 299
waiting until the reopening of navigation and paying | 300
demurrage, or of ordering the Vessel to a safe and | 301
immediately accessible port where she can safely discharge | 302
without risk of detention by ice. Such orders to be given | 303
within 48 hours after Master or Owners have given notice | 304
to Charterers of the impossibility of reaching port of | 305
destination. | 306
b) If during discharging the Master for fear of Vessel being | 307
frozen in deems it advisable to leave, he has liberty to do | 308
so with what cargo he has on board and to proceed to the | 309
nearest accessible port where she can safely discharge. | 310
c) On delivery of the cargo at such port, all conditions of | 311
the Bill of Lading shall apply and Vessel shall receive the | 312
same freight as if she had discharged at the original port of | 313
destination, except that if the distance of the substituted | 314
port exceeds 100 nautical miles, the freight on the cargo | 315
delivered at the substituted port to be increased in | 316
proportion. | 317

**24. Amended Centrocon Strike Clause** | 318
If the cargo cannot be loaded by reason of Riots, Civil | 319
Commotions or of a Strike or Lock-out of any class of | 320
workmen essential to the loading of the cargo, or by reason | 321
of obstructions or stoppages beyond the control of the | 322
Charterers caused by Riots, Civil Commotions or a Strike | 323
or Lock-out on the Railways, or in the Docks, or other loading | 324
Places, or if the cargo cannot be discharged by reason of | 325
Riots, Civil Commotions or of a Strike or Lockout of any | 326
class of workmen essential to the discharge, the time for | 327
Loading or discharging, as the case may be, shall not count | 3.6
during the continuance of such causes, provided that a | 329
Strike or Lock-out of the Shippers' and/or Receivers' men | 330
shall not prevent demurrage accruing if by the use of | 331
reasonable diligence they could have obtained other suitable | 332
labour at rates current before the Strike or Lock-out. | 333
In case of any delay by reason of the before-mentioned | 334
Causes, no claim for damages or demurrage, shall be made | 335
by the Charterers / Receivers of the cargo, or Owners of | 336
the Vessel. For the purpose, however, of settling despatch | 337
Money accounts, any time lost by the before-mentioned | 338
causes shall be counted as time used in loading | 339
or discharging, as the case may be. | 340

**25. General Average and New Jason Clause** | 341
General average shall be adjusted according to the York- | 342
Antwerp Rules 1994 or any subsequent modification thereof, | 343
but where the adjustment is made in accordance with the | 344
law and practice of the United States of America, the | 345
following Clause shall apply: | 346
"In the event of accident, danger, damage or disaster | 347
before or after the commencement of the voyage, | 348
resulting from any cause whatsoever, whether due to | 349
negligence or not, for which, or for the consequence of | 350
which, the carrier is not responsible, by statute, contract | 351
or otherwise, the goods, shippers, consignees, or owners | 352
of the goods shall contribute with the carrier in general | 353
average to the payment of any sacrifices, losses or | 354
expenses of a general average nature that may be made | 355
or incurred and shall pay salvage and special charges | 356
incurred in respect of the goods. | 357
If a salving ship is owned or operated by the carrier, | 358
salvage shall be paid for as fully as if the said salving | 359
Ship or ships belonged to strangers. Such deposit as the | 360

This document is a computer generated SYNACOMEX 2000 form printed by authority of SYNDICAT NATIONAL du COMMERCE EXTERIEUR DES CEREALES (SYNACOMEX). Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original SYNACOMEX document shall apply. BIMCO and SYNACOMEX assume no responsibility for any loss, damage or expense as a result of discrepancies between the original SYNACOMEX document and this computer generated document.

4



## PART II
## "SYNACOMEX 2000" Continent Grain Charterparty

carrier or his Agents may deem sufficient to cover the
estimated contribution of the goods and any salvage and
special charges thereon shall, if required, be made by
the goods, shippers, consignees or owners of the goods
to the carrier before delivery'
and the Charterers shall procure that all Bills of Lading issued
under this Charter Party shall contain the same Clause.

26. Both-to-Blame Collision Clause

If the liability for any collision in which the Vessel is involved
while performing this Charter Party falls to be determined
in accordance with the laws of the United States of America,
the following Clause shall apply:
"If the ship comes into collision with another ship as a result
of the negligence of the other ship and any act, neglect or
default of the master, mariner, pilot or the servants of the
carrier in the navigation or in the management of the ship,
the owners of the goods carried hereunder will indemnity
the carrier against all less or liability to the other or non-
carrying ship or her owners in so far as such loss of liability
Represents loss all or damage to or any claim whatsoever
of the owners of the said goods, paid or payable by the
other or non-carrying ship or her owners to the owners of
the said goods and set off, recouped or recovered by the
other or non-carrying ship or her owners as part of their
claim against the carrying ship or carrier.
The foregoing provisions shall also apply where the...
Owners, Operators or those in charge of any ship or ships
or objects other than, or in addition to, the colliding ships or
objects are at fault in respect to a collision or contact"
and the Charterers shall procure that all Bills of Lading issued
under this Charter Party shall contain the same Clause.

27. War risks ("Voywar 1993")

a) For the purpose of this Clause, the words:
(i) "Owners" shall include the shipowners, bareboat
charterers, disponent-owners, managers or other operators
who are charged with the management of the Vessel, and
the Master; and
(ii) "War Risks" shall include any war (whether actual or
threatened), act of war, civil war, hostilities, revolution,
rebellion, civil commotion, warlike operations, the laying of
mines (whether actual or reported), acts of piracy, acts of
terrorists, acts of hostility or malicious damage, blockades
(whether imposed against all vessels or imposed selectively
against vessels of certain flags or ownership, or against
certain cargoes or crews or otherwise howsoever), by any
person, body, terrorist or political group, or the Government
of any state whatsoever, which, in the reasonable judgement
of the Master and/or the Owners, may be dangerous or are
likely to be or to become dangerous to the Vessel, her cargo,
crew or other persons on board the Vessel.
b) If at any time before the Vessel commences loading, it
appears that, in the reasonable judgement of the Master
and/or the Owners, performance of the Charter Party, or
any part of it, may expose, or is likely to expose, the Vessel,
her cargo, crew or other persons on board the Vessel to
War Risks, the Owners may give notice to the Charterers
cancelling this Charter Party, or may refuse to perform such
part of it as may expose, or may be likely to expose, the
Vessel, her cargo, crew or other persons on board the Vessel
to War Risks; provided always that if this Charter Party
provides that loading or discharging is to take place within a
range of ports, and at the port or ports nominated by the
Charterers the Vessel, her cargo, crew, or other persons
onboard the Vessel may be exposed, or may be likely to be
exposed, to War Risks, the Owners shall first require the
Charterers to nominate any other safe port which lies within

| | |
|---|---|
| | 361 |
| | 362 |
| | 383 |
| | 364 |
| | 365 |
| | 366 |
| | 367 |
| | 368 |
| | 369 |
| | 370 |
| | 371 |
| | 372 |
| | 373 |
| | 374 |
| | 375 |
| | 376 |
| | 377 |
| | 378 |
| | 379 |
| | 380 |
| | 381 |
| | 382 |
| | 383 |
| | 384 |
| | 385 |
| | 386 |
| | 387 |
| | 388 |
| | 389 |
| | 390 |
| | 391 |
| | 392 |
| | 393 |
| | 394 |
| | 395 |
| | 396 |
| | 397 |
| | 398 |
| | 399 |
| | 400 |
| | 401 |
| | 402 |
| | 403 |
| | 404 |
| | 405 |
| | 406 |
| | 407 |
| | 408 |
| | 409 |
| | 410 |
| | 411 |
| | 412 |
| | 413 |
| | 414 |
| | 415 |
| | 416 |
| | 417 |
| | 418 |
| | 419 |
| | 420 |
| | 421 |
| | 422 |
| | 423 |
| | 424 |
| | 425 |
| | 426 |

the range for loading or discharging, and may only cancel
this Charter Party if the Charterers shall not have nominated
such safe port or ports within 48 hours of receipt of notice of
such requirement.
c) The Owners shall not be required to continue to load
cargo for any voyage, or to sign Bills of Lading for any port
or place, or to proceed or continue on any voyage, or on
any part thereof, or to proceed through any canal or
waterway, or to proceed to or remain at any port or place
whatsoever, where it appears, either after the loading of
the cargo commences, or at any stage of the voyage
thereafter before the discharge of the cargo is completed,
that, in the reasonable judgement of the Master and/or the
Owners, the Vessel, her cargo (or any part thereof), crew
or other persons on board the Vessel (or any one or more
of them) may be, or are likely to be, exposed to War Risks.
If it should so appear, the Owners may by notice request
the Charterers to nominate a safe port for the discharge of
the cargo or any part thereof, and if within 48 hours of the
receipt of such notice, the Charterers shall not have
nominated such a port, the Owners may discharge the cargo
at any safe port of their choice (including the port of loading)
in complete fulfilment of the Charter Party. The Owners shall
be entitled to recover from the Charterers the extra expenses
of such discharge and, if the discharge takes place at any
port other than the loading port, to receive the full freight as
Though the cargo had been carried to the discharging port
and if the extra distance exceeds 100 miles, to additional
freight which shall be the same percentage of the freight
contracted for as the percentage which the extra distance
represents to the distance of the normal and customary
route, the Owners having a lien on the cargo for such
expenses and freight
d) If at any stage of the voyage after the loading of the
cargo commences, it appears that, in the reasonable
judgement of the Master and/or the Owners, the Vessel,
her cargo, crew or other persons on board the Vessel may
be, or are likely to be, exposed to War Risks on any part of
the route (including any canal or waterway) which is normally
and customarily used in a voyage of the nature contracted
for, and there is another longer route to the discharging
port, the Owners shall give notice to the Charterers that
this route will be taken. In this event the Owners shall be
entitled, if the total extra distance exceeds 100 miles, to
additional freight which shall be the same percentage of
the freight contracted for as the percentage which the extra
distance represents to the distance of the normal and
customary route.
e) The Vessel shall have liberty:-
(i) to comply with all orders, directions, recommendations
or advice as to departure, arrival, routes, sailing in convoy,
ports of call, stoppages, destinations, discharge of cargo,
delivery or in any way whatsoever which are given by the
Government of the Nation under whose flag the Vessel sails,
or other Government to whose laws the Owners are subject,
or any other Government which so requires, or any body or
group acting with the power to compel compliance with their
orders or directions;
(ii) to comply with the orders, directions or recom-
mendations of anyway risks underwriters who have the
authority to give the same under the terms of the war risks
insurance;
(iii) to comply with the terms of any resolution of the Security
Council of the United Nations, any directives of the European
Community, the effective orders of any other Supranational
body which has the right to issue and give the same, and
with national laws aimed at enforcing the same to which

| | |
|---|---|
| | 427 |
| | 428 |
| | 429 |
| | 430 |
| | 431 |
| | 432 |
| | 433 |
| | 434 |
| | 435 |
| | 436 |
| | 437 |
| | 438 |
| | 439 |
| | 440 |
| | 441 |
| | 442 |
| | 443 |
| | 444 |
| | 445 |
| | 446 |
| | 447 |
| | 448 |
| | 449 |
| | 450 |
| | 451 |
| | 452 |
| | 453 |
| | 454 |
| | 455 |
| | 456 |
| | 457 |
| | 458 |
| | 459 |
| | 460 |
| | 461 |
| | 462 |
| | 463 |
| | 464 |
| | 465 |
| | 466 |
| | 467 |
| | 468 |
| | 469 |
| | 470 |
| | 471 |
| | 472 |
| | 473 |
| | 474 |
| | 475 |
| | 476 |
| | 477 |
| | 478 |
| | 479 |
| | 480 |
| | 481 |
| | 482 |
| | 483 |
| | 484 |
| | 485 |
| | 486 |
| | 487 |
| | 488 |
| | 489 |
| | 490 |
| | 491 |
| | 492 |
| | 493 |

This document is a computer generated SYNACOMEX 2000 form printed by authority of SYNDICAT NATIONAL DU COMMERCE EXTÉRIEUR DES CÉRÉALES (SYNACOMEX). Any intention or deviation to the form must be clearly visible. In the event or any modification made to the pre-printed text of this document which is not clearly visible, the text of the original SYNACOMEX document shall apply. BIMCO and SYNACOMEX assume no responsibility for any loss, damage or expense as a result of discrepancies between the original SYNACOMEX document and this computer generated document.

5

Case 1:07-cv-04036-JGK    Document 1-2    Filed 05/23/2007    Page 7 of 7
P.27/83
TO 0012129835946
04-APR-2007 17:49 FROM JACKSON PARTON
FAX NO. : 65 63244450
FROM :
Dec. 06 2006 04:07PM P6



ORIGINAL!

**PART II**
**"SYNACOMEX 2000" Continent Grain Charterparty**

| | |
|---|---|
| the Owners are subject, and to obey the orders and | 494 |
| directions of those who are charged with their enforcement; | 495 |
| (iv) a discharge at any other port any cargo or part thereof | 496 |
| which may render the Vessel liable to confiscation as a | 497 |
| contraband carrier; | 498 |
| (v) to call at any other port to change the crew or any part | 499 |
| thereof or other persons on board the Vessel when there is | 500 |
| reason to believe that they may be subject to internment, | 501 |
| imprisonment or other sanctions; | 502 |
| (vi) where cargo has not been loaded or has been | 503 |
| discharged by the Owners under any provisions of this | 504 |
| Clause, to load other cargo for the Owners' own benefit | 505 |
| and carry it to any other port or ports whatsoever, whether | 506 |
| backwards or forwards or in a contrary direction to the | 507 |
| ordinary or customary route. | 508 |
| f) If in compliance with any of the provisions of sub-clauses | 509 |
| b) to e) of this Clause anything is done or not done, such | 510 |
| shall not be deemed to be a deviation, but shall be | 511 |
| considered as due fulfilment of the Charter Party. | 512 |
| **28. Arbitration See clause 49** | 513 |
| Any dispute arising out of the present contract shall be | 514 |
| referred to Arbitration of "Chambre Arbitrale Maritime de | 515 |
| Paris - 16 rue Daunou - 75002 Paris". | 516 |
| The decision rendered according to the rules of Chambre | 517 |
| Arbitrale and according to French Law shall be final and | 518 |
| binding upon both parties. The right of both parties to refer | 519 |
| any disputes to arbitration ceases twelve months after date | 520 |
| of completion of discharge or, in case of cancellation of non- | 521 |
| performance, twelve months after the cancelling date as per | 522 |
| Clause 6 or after the actual date of cancellation whichever is | 523 |
| the later. Where this provision is not complied with, the claim | 524 |
| shall be deemed to be waived and absolutely barred. | 525 |

This document is a computer generated SYNACOMEX 2000 form printed by authority of SYNDICAT NATIONAL DU COMMERCE EXTERIEUR DES CEREALES (SYNACOMEX). Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original SYNACOMEX document shall apply. SNCO and SYNACOMEX assume no responsibility for any loss, damage or expense as a result of discrepancies between the original SYNACOMEX document and this computer generated document.

6