UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
CRUISER SHIPPING PTE LTD. and UNIVERSAL
NAVIGATION PTE LTD.,

                Plaintiffs,

  -against-

SUNDERSONS LTD., MILAN NIGERIA LTD.,
SIMRAN MEHER LTD. and VALECHHA
HOLDINGS LIMITED,                            07 CV 4036 (JGK)

                Defendants.
-------------------------------------------------------------------X

## PLAINTIFFS' MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANTS' MOTION
## FOR COUNTERSECURITY PURSUANT TO SUPPLEMENTAL RULE E(7)

                              BROWN GAVALAS & FROMM LLP
                              Attorneys for Plaintiffs
                              CRUISER SHIPPING PTE LTD. and
                              UNIVERSAL NAVIGATION PTE LTD.
                              355 Lexington Avenue
                              New York, New York 10017
                              212-983-8500

Of Counsel:
  Peter Skoufalos

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT AND
PROCEDURAL BACKGROUND .................................................................................... 2

FACTS ............................................................................................................................... 2

POINT I

THE COURT SHOULD EXERCISE ITS BROAD
DISCRETION TO DENY DEFENDANTS' MOTION
FOR COUNTERSECURITY .......................................................................................... 4

POINT II

DEFENDANTS' COUNTERCLAIM SHOULD BE
DISMISSED AS FRIVOLOUS ........................................................................................ 5

POINT III

DEFENDANTS ARE REQUIRED TO ACCEPT A
LETTER OF GUARANTEE FROM PLAINTIFFS'
"P&I" INSURER AS SECURITY FOR ANY CARGO CLAIMS ............................... 9

    a. Defendants should be ordered to accept
       the P&I Club Letter of Guarantee: ....................................................................... 9

    b. Defendants have already received a cash payment
       of $70,000, for which amount Plaintiffs are entitled to a credit: ..................... 9

CONCLUSION ............................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Afram Lines International, Inc. v. WV Capetan Yiannis*
   905 F.2d 347, 349 (11th Cir. 1990) ................................................................. 4

*Dongbu Express Co. Ltd. v. Navios Corp.*
   944 F. Supp. 235, 237 (S.D.N.Y. 1996) ............................................................ 5

*Expert Diesel, Inc. v. Yacht FISHIN FOOL*
   627 F. Supp. 432 (S.D. Fla. 1986) ..................................................................... 8

*Result Shipping Co. v. Feruzzi Trading USA Inc.*
   56 F.3d 394, 399 (2d Cir. *1995)* ....................................................................... 4

*Titan Navigation, Inc. v. Timsco, Inc.*
   808 F.2d 400, 403 (5th Cir. 1987) ..................................................................... 4

*Trinidad Foundry & Fabrication, Ltd. v. M/V KAS CAMILLA*
   776 F. Supp. 1555 (S.D. Fla. 1991) ............................................................... 7, 8

*U.S. Maritime Services Inc. v. Trade Ventures Inc.*
   No. CIV A. 98-0499, 1998 WL 388669 (E.D. La. July 8, 1998) ...................... 8

*Ythan Ltd. American Bulk Transport Ltd.*
   336 F. Supp. 2d 305 (S.D.N.Y. 2004) ............................................................... 7

OTHER AUTHORITIES

7A James W. Moore et al, Moore's Federal Practice
P E.l5, at E-756 (2d ed. 1995)) ............................................................................... 4

BROWN GAVALAS & FROMM LLP
Attorneys for Plaintiffs
CRUISER SHIPPING PTE LTD. and
UNIVERSAL NAVIGATION PTE LTD.
355 Lexington Avenue
New York, New York 10017
212-983-8500


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
CRUISER SHIPPING PTE LTD. and UNIVERSAL
NAVIGATION PTE LTD.,
                                                                        07 CV 4036 (JGK)
                        Plaintiffs,

        -against-

SUNDERSONS LTD., MILAN NIGERIA LTD.,
SIMRAN MEHER LTD. and VALECHHA
HOLDINGS LIMITED,

                        Defendants.
------------------------------------------------------------------X

### PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR COUNTERSECURITY PURSUANT TO SUPPLEMENTAL RULE E(7)

Plaintiffs, Cruiser Shipping Pte Ltd. and Universal Navigation Pte Ltd. (hereinafter Plaintiffs), by their undersigned counsel, Brown Gavalas & Fromm LLP, submit the within Memorandum of Law in Opposition to Defendants' Motion for Counter-security. Also submitted on behalf of the Plaintiffs and in opposition to the current motion are: (i) the Declaration of Nicholas G. Parton, Esq., a senior partner with the firm of Jackson Parton Solicitors, Plaintiffs' attorneys in London ("Parton Dec.") and (ii) the affidavit of Peter Skoufalos, Plaintiffs' counsel in this action (Skoufalos Aff.").

1

## PRELIMINARY STATEMENT AND PROCEDURAL BACKGROUND

In the context of a Rule E(7) application, a grant of countersecurity is far from automatic. Rather, the Court has considerable leeway. For the reasons that follow, the Court, in the exercise of its discretion, should deny Defendants' motion because:

(1) Defendants have already been offered full and adequate security for their alleged claims, which are, in any event, frivolous; and

(2) Defendants are bound by Clause 54 of their contract which states that Defendants' "are to accept" a "Letter of Guarantee" as security for any cargo claims.

The current action was commenced on May 23, 2007, naming the defendants Sundersons Ltd. ("Sundersons") and Milan Nigeria Ltd. ("Milan Nigeria"), and alleging various breaches by those defendants of a charter agreement relating to a voyage of the vessel M/V CRUISER ("the Vessel") to Port Harcourt, Nigeria in September 2006 ("the Charter Agreement"). An amended Complaint filed on June 21, 2007 added defendant Simran Meher Limited ("Simran Meher"). A second amended complaint filed on September 6, 2007 added defendant Valechha Holdings Limited ("Valechha"). Plaintiffs' Second Amended Complaint is annexed to the Skoufalos Affidavit as Exhibit "1". An Order authorizing issuance of process of maritime attachment and garnishment up to the amount of $417,614.40 was issued on May 24, 2007.[1]

## FACTS

The background facts are set forth in the accompanying Declaration of Nicholas G. Parton, Esq., who has represented the Plaintiffs since the inception of the current dispute with the Defendants.[2]

---

[1] An amended order and a second amended order relating to the additional defendants were signed by the court on June 27, 2007 and September 6, 2007, respectively.

[2] Plaintiffs' detailed allegations against the Defendants can be found at Exhibit "D" to the Parton

2

Briefly, the underlying disputes arises out of a charter agreement dated August 4, 2006 between plaintiff, Universal, and defendant Sunderson, whereby Universal agreed to let, and Sunderson, as charterer, agreed to hire the M/V CRUISER ("the Vessel") for a voyage from Kakinda, India to Port Harcourt, Nigeria. [Parton Dec. ¶ 4; 2nd Amended Comp. ¶ 8]. The Charter Agreement is annexed to the Skoufalos Affidavit as Exhibit "2".

Bills of lading numbered C1-20 were issued for the cargo loaded aboard the Vessel for discharge in Nigeria ("the Bills of Lading"). Defendant Milan Nigeria was the receiver and/or consignee of the cargo evidenced on each of the Bills of Ladings. There is no dispute that the Bills of Lading incorporate all the terms of the Charter Agreement, including the London arbitration clause found at Clause 50. The Bills of lading are annexed to the Skoufalos Affidavit as Exhibit "3".

It is Plaintiffs' contention in the current action, and in London arbitration, that the Defendants improperly seized and detained the Vessel in Port Harcourt in order to compel the Plaintiffs, under duress, to make a cash payment in settlement of claims for alleged cargo shortage. [Parton Dec. ¶¶ 5-6; 2nd Amended Comp. ¶¶12-13, 16-17].

Moreover, it is indisputable that a Letter of Undertaking in the amount of $240,987.60 was issued on December 8, 2006 by Plaintiffs' protection and indemnity insurers, The South of England Protection and Indemnity Association (Bermuda) Limited ("SOE"), and was tendered on several occasions to the Defendants beginning on December 9th 2006. However, Defendants refused to accept the Letter of Undertaking and, instead, continued to make cash demands of the Defendants. [Parton Dec. ¶ 7-8].

---

Declaration. This document is the First Witness Statement of Mr. Parton, in the anti-suit injunction proceedings in London.

3

The SOE Letter of Undertaking is annexed to the Parton Declaration as Exhibit "A"

On or about October 4, 2007 garnishee bank Standard Chartered Bank filed an "Answer of Garnishee" in the present action advising that the amount of $417,614.40—the full amount of Plaintiffs' claim—was being restrained pursuant to the Order of Attachment issued by the Court. These funds remain under attachment by Standard Chartered Bank. [Skoufalos Aff. ¶ 9]

## POINT I

### THE COURT SHOULD EXERCISE ITS BROAD DISCRETION TO DENY DEFENDANTS' MOTION FOR COUNTERSECURITY

An award of countersecurity under Supplemental Rule E(7) is not mandatory. Plaintiffs respectfully submit that, under the circumstances of this matter, it would be manifestly inequitable to grant the Defendants' motion, because (1) the Defendants were offered security almost a year ago for the precise claims for which they now seek security; (2) Defendants' claim for alleged cargo damage and countersecurity in the amount of $158,472.73 is frivolous.

A "trial court possesses broad discretion in deciding whether to order countersecurity," *Result Shipping Co. v. Feruzzi Trading USA Inc.*, 56 F.3d 394, 399 (2d Cir. 1995) (citing *Afram Lines International, Inc. v. WV Capetan Yiannis*, 905 F.2d 347, 349 (11th Cir. 1990); *Titan Navigation, Inc. v. Timsco, Inc.*, 808 F.2d 400, 403 (5th Cir. 1987); and 7A James W. Moore et al, Moore's Federal Practice P E.15, at E-756 (2d ed. 1995)).

In *Result Shipping,* the Second Circuit stated that "in exercising this discretion, the court should be guided primarily by two principles, which sometimes conflict with one another. On the one hand, the purpose of Rule E(7) is 'to place the parties on an

4

equality as regards security,. . . which usually favors granting countersecurity when a defendant whose property has been attached asserts non-frivolous counterclaims growing out of the same transaction, especially when the counterclaimant could have proceeded *in rem* or *quasi in rem* in an independent suit. On the other hand, the Rule is not intended to impose burdensome costs on a plaintiff that might prevent it from bringing suit." *Id.* at 399-400 (citations omitted).

As set out in more detail below, Defendants' request for countersecurity in the present action appears to have been an afterthought, motivated solely for the purpose of deterring Plaintiffs' from availing themselves of their maritime attachment remedies under the Supplemental Admiralty Rules. Furthermore, Defendants should be precluded from invoking Supplemental Rule E(7) where, as here, Defendants were offered security over a year ago, but rejected it. It would be manifestly inequitable to require Plaintiffs to again provide security where such security has already been refused.

## POINT II

### DEFENDANTS' COUNTERCLAIM SHOULD BE DISMISSED AS FRIVOLOUS

While it is well settled that, in an attachment proceeding, a claimant need not prove its damages with exactitude, the court must be satisfied that the claimant's claims are not frivolous. *See Dongbu Express Co. Ltd. v. Navios Corp.*, 944 F. Supp. 235, 237 (S.D.N.Y. 1996). Here, Defendants' claim for cargo damage has been a veritable moving target, involving uncertain quantities of cargo and fluctuating valuations.

For example, in the original pleadings filed by Defendants in Nigeria in December 2006 in connection with the arrest of the Vessel, Defendants assert that 3753

5

bags were short-landed and that 3306 bags were "caked". Damages of $240,987.60 were claimed [Skoufalos Aff. ¶16; Ex. "6"].

Almost one year later, in November 2007, Defendants asserted in their "counterclaim" in this Court that 3,703 bags were short-landed and another 3,000 bags were allegedly "caked". In this pleading, Defendants claim damages of $218,238.80. [Skoufalos Aff. ¶14; Ex. "4"].

More recently, Defendants amended their "counterclaim" yet again, this time drastically revising their alleged damages to $94,907.16. [Skoufalos Aff. ¶14; Ex. "5"].

Of course, in December 2006, Defendants were prepared to accept $70,000 as settlement of the entire claim for alleged cargo damage [Parton Dec. ¶ 10].

Other factors weigh heavily against allowing any security for Defendants' alleged cargo claims.

a) No evidence has been offered by Defendants that the Vessel was in any way unseaworthy or not properly equipped. In fact, Defendants accepted the Vessel as suitable to load the cargo (clause 55 of the Charter Agreement, as incorporated into the Bills of Lading).

b) Plaintiffs expect to demonstrate in the London arbitration that the cargo was loaded by Defendants with high moisture content; the principal cause of any "caking" condition;

c) Plaintiffs are not responsible for losses arising prior to loading and/or after discharge (clause 22 of the Charter Agreement, as incorporated to the Bills of Lading). All loading and discharge of cargo was done at the Defendant' risk and expense (clause 5 of the Charter Agreement, as incorporated to the Bills of Lading).

d) Any losses that did arise were caused by the stevedores (who were employed and controlled by the Defendants and/or their agents) mishandling the cargo, stealing, pilfering and deliberately tearing bags in order to steal their contents.

In addition, Plaintiffs have consistently and steadfastly denied any liability for cargo shortage and have objected to Defendants' claim from the outset. In a Master's

6

Protest signed at or shortly after the time of discharge in Nigeria, the Master of the Vessel noted that: "All bags discharged against manifest/all holds are empty. Vessel not responsible for any short landing." [Skoufalos Aff. ¶ 17; Ex. 7] Further, on December 11, 2006—at the time of discharge—plaintiff Universal expressly denied any liability for cargo damage. That correspondence noted that "[t]he shortage as per [owners] tally is nil." [Skoufalos Aff. ¶18; Ex. "8"].

In *Ythan Ltd. American Bulk Transport Ltd.*, 336 F. Supp. 2d 305 (S.D.N.Y. 2004), the defendant sought $4.4 million in countersecurity on a cargo indemnity claim. *Id. at 39.* In denying that portion of the defendant's countersecurity request, the court ruled that the "highly contingent" nature of the defendant's claim made posting of such countersecurity inappropriate.

In *Trinidad Foundry & Fabrication, Ltd. v. M/V KAS CAMILLA*, 776 F. Supp. 1555 (S.D. Fla. 1991), the plaintiff arrested the defendant's vessel in connection with its claims for repairs and necessaries. *Id. at 1556.* The defendant shipowner counterclaimed for damage to the vessel due to plaintiff's negligence, breach of warranty and breach of contract and moved for countersecurity under Rule E(7). *Id. at 1558.* In its application, the defendant contented that the plain language of Rule E(7) require the plaintiff to post counter-security. *Id.* The court disagreed and, after examining the facts surrounding defendant's purported "counterclaim" refused to order the posting of countersecurity:

> [Defendant] argues that the plain language of Rule E(7) requires Plaintiff to post a bond or other security on the Counterclaims filed in this action. The Court is not persuaded by Defendant's reasoning in this regard. Rule E(7) mandates the posting of countersecurity in this instant unless the Court, for cause shown, directs otherwise. In the present case, Defendant's authorized representative executed Plaintiff's Notice of Repairs Satisfactorily Completed, confirming that the repairs performed by Plaintiff to

7

the Vessel has been satisfactorily completed. The Undersigned believes that this fact alone indicates that Defendants' Counterclaims may be frivolous and constitutes sufficient cause shown to remove the presumption of countersecurity dictated by Rule E(7). The Court would like to not parenthetically that this preliminary determination of the nature of Defendant's Counterclaims is germane only to the instant determination of the posting countersecurity. It in no way speaks to the merits of Defendant's counterclaims and has no res judicata or collateral estoppel effect.

In *Expert Diesel, Inc. v. Yacht FISHIN FOOL*, 627 F. Supp. 432 (S.D. Fla. 1986), the Court refused to grant the defendants' request for countersecurity on counterclaims similar to those asserted by the defendant in *KAS CAMILLA*. *See id.* In so holding, it stated "the court is reluctant to compel Plaintiff to post a bond in light of Defendant's damage claims of a general rather that a precisely detailed nature." *Id.* at 433.

In *U.S. Maritime Services Inc. v. Trade Ventures Inc.* No. CIV A. 98-0499, 1998 WL 388669 (E.D. La. July 8, 1998), the defendants counterclaimed for damages arising over a lost charter party. *Id.* at *2. In denying the defendant's motion for countersecurity, the court ruled that the counterclaim was too speculative and insufficiently supported to justify an order directing the posting of countersecurity.

> The defendant's claim for the alleged lost charter is too speculative to sustain an order for countersecurity. Unlike plaintiff's claim which is based on past events reasonably able to be ascertained and quantified, defendant's losses due to a "road not taken" cannot be so readily ascertained and quantified. The Baldwin affidavit is insufficient by itself to determine what the defendants estimated actual loss is after expenses and other items are deducted, even assuming the actual loss is after expenses and other items are deducted, even assuming the voyage would have occurred but for the plaintiff's alleged broken agreement.

8

## POINT III

## DEFENDANTS ARE REQUIRED TO ACCEPT A LETTER OF GUARANTEE FROM PLAINTIFFS' "P & I" INSURER AS SECURITY FOR ANY CARGO CLAIMS

a. **Defendants should be ordered to accept the P&I Club Letter of Guarantee:**

As set forth above, there are ample grounds for the exercise of the Court's discretion to deny Defendants' request for countersecurity in this case. However, even if countersecurity were allowed in this matter, the parties contract—the Charter Agreement—already defines the form of any security to which Defendants may be entitled.

As described in the Parton Declaration in opposition to the present motion, The Defendants' refusal to accept the Letter of Undertaking as security for their alleged claim and to release the vessel, was a breach of clause 54 of the Charter Agreement (which binds all the Defendants) and which provides:

> *"In the event of any alleged cargo claim/shortages Charterers/Receivers are to accept Owners' Pandi Club Letter of Guarantee/bond only. No cash settlement to be allowed whatsoever.* Owners Pandi Club is South of England. (Emphasis supplied)
>
> *If vessel is not released then immediately vessel goes on detention at USD12,000 per day pro rata plus costs of bunkers consumed and any other directly related costs until vessel is released"*

b. **Defendants have already received a cash payment of $70,000, for which amount Plaintiffs are entitled to a credit:**

As set forth above, there are ample grounds for the exercise of the Court's discretion to deny Defendants' request for countersecurity. Moreover, if the Court orders countersecurity in the amount claimed by Defendants, the Charter Agreement leaves no

9

doubt that Defendants are required to accept as security a Letter of Guarantee issued by Plaintiffs' protection and indemnity (P&I) insurer.

It would also be highly inequitable to require Plaintiffs to post countersecurity without being given a credit for the $70,000 payment already made to Defendants in Nigeria in December 2006. Plaintiffs, of course, contend that this $70,000 payment was made under duress and should be returned, and this issue will be the ultimate concern of the London arbitration tribunal.

However, for purposes of security, Defendants should not be permitted to retain the $70,000 cash payment, while seeking additional security for the full amount of their claim. Clearly, this would be tantamount to requiring Plaintiffs to furnish security twice for the same claim.

## CONCLUSION

For all of the foregoing reasons, Defendants' Motion for Countersecurity should in all respect be denied.

Dated: New York, New York
December 3, 2007

BROWN GAVALAS & FROMM LLP
Attorneys for Plaintiffs

Peter Skoufalos

355 Lexington Avenue, 4th Floor
New York, New York 10017
Telephone:   212 983-8500
Telefax:     212 983-5946