BROWN GAVALAS & FROMM LLP
Attorneys for Plaintiffs
355 Lexington Avenue, 4th Floor
New York, NY 10017
(212) 983-8500

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CRUISER SHIPPING PTE LTD. and
UNIVERSAL NAVIGATION PTE LTD.,

                        Plaintiffs,

               - against -

SUNDERSONS LTD., MILAN NIGERIA
LTD., SIMRAN MEHER LTD. and
VALECHHA HOLDINGS LIMITED,

                        Defendants.
------------------------------------------------------------X

07 Civ. 4036 (JGK)

**AFFIDAVIT OF**
**PETER SKOUFALOS**

STATE OF NEW YORK   )
                            )SS.:
COUNTY OF NEW YORK )

    PETER SKOUFALOS, being duly sworn, deposes and states:

1.    I am a member of the firm of Brown Gavalas & Fromm LLP, attorneys for plaintiffs, Cruiser Shipping Pte. Ltd. ("Cruiser") and Universal Navigation Pte Ltd. ("Universal") (also collectively referred to herein as "Plaintiffs"). I submit this affidavit in support of Plaintiffs' opposition to Defendants' motion pursuant to Supplemental Admiralty Rule E(7) for an order requiring Plaintiffs to provide countersecurity in respect of an alleged counterclaim.

2. The statements made herein are based on information gathered by me as counsel for Plaintiffs, including information and/or documents furnished to me by Plaintiffs and their London counsel, the firm of Jackson Parton Solicitors.

3. Plaintiffs commenced the present action on May 23, 2007 against the defendants Sundersons Ltd. ("Sundersons") and Milan Nigeria Ltd. ("Milan Nigeria") alleging various breaches by the Defendants of a charter agreement relating to a voyage of the vessel M/V CRUISER ("the Vessel") to Port Harcourt, Nigeria in September 2006 (hereinafter the "Charter Agreement"). An amended Complaint filed on June 21, 2007 added defendant Simran Meher Limited ("Simran Meher"). A second amendment to the Complaint on September 6, 2007 added defendant Valechha Holdings Limited ("Valechha"). Plaintiffs' Second Amended Complaint is annexed hereto as Exhibit "1".

4. Plaintiffs obtained an *ex parte* order authorizing maritime attachment pursuant to Rule B on May 24, 2007; an Amended Order on on June 27, 2007; and, a second amended Order on September 6, 2007, authorizing issuance of process of maritime attachment and garnishment up to the amount of $417,614.40, inclusive of interest and London legal costs.

5. Among other breaches, Plaintiffs' Second Amended Complaint alleges that the Defendants improperly seized and detained the Vessel in Port Harcourt in December 2006 in order to compel the Plaintiffs, under duress, to waive their own claims and defenses and to make a cash payment to Defendants in settlement of alleged claims for cargo shortage and "caking". [Second Amended Complaint ¶¶12-13, 16-17]

6. In addition, the Second Amended Complaint alleges that Plaintiffs had offered "to post a guarantee letter from plaintiffs' insurer" and that such guarantees "are routinely

2

offered and accepted in international shipping transactions and are considered good and acceptable security for claims." [Second Amended Complaint ¶14].

7. A copy of the Letter of Guarantee offered to the defendants in December 2006 is annexed as Exhibit "A" to the Declaration of Nicholas G. Parton, Esq., also submitted in opposition to Defendants' present motion.

8. Finally, Plaintiffs' Second Amended Complaint alleges that the present action is "to obtain adequate security to satisfy a potential London arbitration award in plaintiffs' favor." [Second Amended Complaint ¶¶27-28] The claim amount of $417,614.40, is inclusive of interest and anticipated recoverable London legal costs.

9. On or about October 4, 2007 garnishee bank Standard Chartered Bank filed an "Answer of Garnishee" in the present action advising that the amount of $417,614.40—the full amount of Plaintiffs' claim—was being restrained pursuant to the Order of Attachment issued by the Court. These funds remain under attachment by Standard Chartered Bank, and no acceptable substitute security has been offered by the Defendants.

10. Defendants have now asserted a counterclaim and an amended counterclaim, totaling $158,472.73, inclusive of interest and costs. For the reasons set out in the accompanying Memorandum of Law in Opposition to Counter Security, Defendants' request for counter-security should be denied outright.

11. However, if the Court orders countersecurity, Defendants are required by the Charter agreement to accept a letter of guarantee from Plaintiffs' insurers. The Parton Declaration confirms that this letter of guarantee is available to secure this alleged claim today, much as it was available to secure the alleged claim back in December 2006 when

the Vessel remained under wrongful detention by the defendants in Nigeria. [Parton Declaration ¶¶ 8,12].

12. Annexed hereto as Exhibit "2" is the Charter Agreement between plaintiff Universal and defendant Sundersons:

    a) Clause 50 (Rider) of the Charter Agreement requires all disputes under the agreement to be decided by a 3-person arbitration panel in London;

    b) Clause 54 (Rider) provides that *"in the event of any alleged cargo claims/shortages charterers/Receivers are to accept Owners' Pandi Club Letter of Guarantee/bond only."* (Emphasis added)

13. Annexed hereto as Exhibit "3" are the bills of lading evidencing all the cargo discharged in Port Harcourt to Defendant Milan Nigeria, and from which Milan Nigeria's alleged cargo claim is said to arise. The Bills of Lading incorporate the terms of the Charter Agreement, including the arbitration agreement at Clause 50.

14. Annexed hereto as Exhibit "4" is Defendants' "Counter-Claim" dated November 2, 2007 in the amount of $218,238.80.

15. Annexed hereto as Exhibit "5" is Defendants' amended undated "Counter-Claim" in the amount of $94,907.16.

16. Annexed hereto as Exhibit "6" is the Statement of Claim filed by the Defendants at the time they sought and obtained the arrest of the Vessel in Nigeria in December 2006.

17. Annexed hereto as Exhibit "7" is a protest letter dated December 2006 noting the Vessel's Master's objection to any claim for cargo damage because "All bags discharged against manifest/all holds are empty. Vessel not responsible for any short landing."

18.     Annexed hereto as Exhibit "8" is plaintiff Universal's correspondence of December 11, 2006—at around the time of the cargo discharge in Nigeria—disputing that there was any basis for a claim for cargo damage.

19.     For the reasons stated herein and in the annexed memorandum of law, Defendants' motion for countersecurity should in all respects be denied. If, after securing Plaintiffs' claim, Defendants' are found to be entitled to counter-security, Defendants should be required to accept a letter of guarantee from Plaintiff's insurer, as required by the parties' Charter Agreement.

_____
PETER SKOUFALOS

Sworn to before me this
3rd day of December, 2007

_____
NOTARY PUBLIC

EVAN B. RUDNICKI
Notary Public of the State of New York
No. 02RU6142314
Qualified in Rockland County
Term Expires March 13, 20__

5