# EXHIBIT "2"

# CONTINENT GRAIN CHARTERPARTY
## Code name: "SYNACOMEX 2000"

Adopted PARIS 1957 by SYNDICAT NATIONAL DU COMMERCE EXTERIEUR DES CEREALES amended 1960, 1974, 1990 and 2000 in agreement with COMITE CENTRAL DES ARMATEURS DE FRANCE in cooperation with Chambre Arbitrale Maritime de Paris and the French Chartering and S. & P. Brokers' Association

**ORIGINAL**

**PART I**

| | |
|---|---|
| 1. Shipbroker(s)<br>Anglomar Shipping Ltd., London | 2. Place and date of Charter Party<br>London 04th AUGUST 2006 |
| 3. Owners and place of business (state full style and address) (Cl. 1)<br>Universal Navigation<br><br>as Disponent Owners | 4. Charterers and place of business (state full style and address) (Cl. 1)<br>Sundersons Nigeria, Ltd. |
| 5. Vessel's name (Cl. 1) mv CRUISER<br>flag / built / class: Panama 1982 Hellenic<br>NT / GT: 15,904/9,834<br>summer DWT: See Clause 29 | 6. First layday date (Cl. 6) 12th August 2006<br><br>Cancelling date (Cl. 6) 22nd August 2006 |
| | 7. Present position / expected ready to load (Cl. 1)<br>trading |
| 8. Loading port(s) (Cl. 2)<br>Kakinada | 9. Advance notices (Cl. 7) |
| a) Always afloat (*)  b) "safely aground" (*) | - at load port to: |
| 10. Discharging port(s) (Cl. 3)<br>1 safe berth Lagos plus 1 sb Port Harcourt | |
| a) Always afloat (*)  b) "safely aground" (*) | - at discharging port: number of days / to: 7 |
| 11. Cargo nature and quantities (Cl. 2) | 12. Freight rate (Cl. 4)<br>USD 65.00 per metric ton free in and out free stowed basis 1 load / 2 discharge |
| a) No bags (*)  b) Maximum in bags for stowage (*) | |
| 13. Freight rate payment (state currency and method of payment, beneficiary and bank account) (Cl. 4)<br>See Clause 47 | 14. Loading rate (Cl. 5)<br>2000 metric tons pwwd shex. See also Clause 8 |
| | 15. Discharging rate (Cl. 5)<br>1000 metric tons pwwd sshex. See also Clause 8. |
| | 16. Demurrage / Despatch money (Cl. 9)<br>USD 8,000 pdpr / hdwtsbe |
| 17. Agents at loading port(s) (Cl. 13)<br>See Clause 52 | 18. Agents at discharging port(s) (Cl. 13)<br>See Clause 52 |
| 19. Extra insurance, maximum (Cl. 14) | 20. Brokerage commission and to whom payable (Cl. 15)<br>1.25% to Anglomar Shipping Ltd. to be deducted from freight |
| 21. Address Commission (Cl. 16)<br>2.5% to Charterers to be deducted from freight | |
| | a) Deductible (*)  b) Non-deductible (*) |

22. Numbers of the additional clauses covering special provisions, if any agreed
Additional clauses from clause 29 to clause 58 are deemed to be incorporated to this Charter Party

It is mutually agreed that this Charter Party shall be performed subject to the conditions contained herein consisting of PART I and PART II including additional clauses if any agreed and stated in Box 22. In the event of a conflict of conditions, the provisions of PART I shall prevail over those of PART II to the extent of such conflict but no further.

For the Owners _[signature]_    For the Charterers

(*) Delete as appropriate; if no deletion, alternative a) to apply.

This document is a computer generated SYNACOMEX 2000 form printed by authority of SYNDICAT NATIONAL DU COMMERCE EXTERIEUR DES CEREALES (SYNACOMEX). Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original SYNACOMEX document shall apply. BIMCO and SYNACOMEX assume no responsibility for any loss, damage or expense as a result of discrepancies between the original SYNACOMEX document and this computer generated document.

**ORIGINAL**

PART II
"SYNACOMEX 2000" Continent Grain Charterparty

**1. Owners, Charterers**
It is this day agreed between the party designated in Box 3, Owners of the Vessel named and described in Box 5, being now in position and expected ready to load as mentioned in Box 7, and the party designated in Box 4 as Charterers, THAT

**2. Loading Port(s) and Cargo**
The said Vessel being tight, staunch and in every way fit for the voyage, shall with all convenient speed proceed to the place designated in Box 8, which in case of named port(s). 1 safe berth / safe anchorage Kakinada
Owners acknowledge as safe and suitable for this Vessel and there load always afloat, unless "safely aground" has been specifically agreed in Box 8, in such safe berth, dock, wharf or anchorage as Charterers or their Agents or Shippers may direct a full-and complete cargo 23,000/44,750 metric tons 45,000 metric tons min/maximum of bagged Rice, Exact quantity as per actual stowage factor which Charterers advise but do not guarantee as 51'. To be declareded seven days prior arrival at load port of wheat
and/or maize and/or rye and/or barley as described in Box 11, in metric tons (5 % more or less in Owners' option) in bulk. Shippers have the option of using a second safe berth. The time for shifting between the two berths shall count as laytime, but shifting expenses shall be for Vessel's account. Owners shall provide and install at their risk and expense and on their time all that is required for safe stowage of grain according to local and international regulations.
The cargo shall not exceed what the Vessel can reasonably stow and carry over and above her bunkers, apparel, stores, provisions and accommodation. The whole cargo shall be carried and stowed under deck in unobstructed main holds. All cargo on board to be delivered.
Furthermore, if stowage bags have been specifically agreed, the following shall apply:
Charterers shall supply for stowage purposes a quantity of bagged cargo not exceeding the quantity specified in Box 11, which shall be stowed at their risk and expense. The number of bags signed for on Bills of Lading to be binding on Vessel and Owners, unless error or fraud be proved.

**3. Discharging Port(s)**
Being so loaded, the Vessel shall proceed with all convenient speed direct to the place designated in Box 10, 1 safe berth Lagos including Tincan island plus 1 safe berth Port harcourt in Charterers' option, Charterers advise that min draft in Lagos 9.5 meters salt water which in
case of named port(s) Owners acknowledge as safe and suitable for this Vessel, and there discharge the cargo always afloat, unless "safely aground" has been specifically agreed in Box 10, in such safe berth, dock, wharf or anchorage as Charterers or their Agents or Receivers may direct. Receivers have the option of using a second safe berth. The time for shifting between the two berths shall count as laytime, but shifting expenses shall be for Vessel's account.

**4. Freight**
The freight agreed under this Charter Party shall be as stated in Box 12, per metric ton on nett Bill of Lading weight and shall be deemed earned as cargo is loaded on board, prepaid discountless and non-returnable, Vessel and/or cargo lost or not lost.
The freight shall be paid as per Clause 47. as specified in Box 13. All charges and dues levied on the cargo shall be for Charterers' account and those levied on the Vessel howsoever assessed shall be for Owners' account.

**5. Loading and Discharging**
Cargo shall be loaded, spout-trimmed and/or stowed at the risk and expense of Shippers/Charterers at the average rate stated in Box 14, 1500/2000/1000 metric tons per weather working day basis vessel's gear as described Sundays and Holidays excluded. See also Clause 8 weather permitting.

Cargo shall be discharged at the risk and expense of Receivers/Charterers at the average rate stated in Box 15, 1000 metric tons per weather working day basis vessel's gear as described Saturdays, Sundays and Holidays excluded. See also Clause 8.
weather permitting.
Stowage shall be under Master's direction and responsibility. Shippers' and/or Charterers' representatives have the right to be on board the Vessel during loading, discharging or lightering for the purpose of inspecting the cargo and/or weighing. Charterers and Owners are allowed to work overtime, such expenses shall be for account of the party ordering same. If ordered by Port Authorities, overtime shall be for Charterers' account. Overtime services rendered by ship's crew shall be in all cases for Owners' account.

**6. Laydays, Cancelling**
At port of loading laytime shall not count before 08.00 hours on the layday date stated in Box 5 and in any case not before the date notified by the 10 days notice as per Clause 7. Should the Vessel's notice of readiness not be validly tendered as per Clause 8 before 08.00 hours on the cancelling date stated in Box 6, Charterers shall have the Option of cancelling this charter at any time thereafter, but not later than one hour after the notice is validly tendered.

**7. Vessel's Positions, Notices**
Master and/or Owners shall give 10 days and thereafter 5/4/3/2/1 days and 12 hours notice of Vessel's expected readiness to load to the party designated in Box 9.
Master and/or Owners shall give 7/5/4/3/2/1 days notice of Vessel's Expected Time of Arrival (ETA) at discharging port as specified in Box 9 (to be advised)
Master and/or Owners shall give the relevant parties prompt Advice of any substantial change in Vessel's ETA at loading and at discharging ports.

**8. Laytime**
Vessel's written notice of readiness to load and/or discharge shall be tendered by hand or by any means of tele-communication at the offices of Shippers/Charterers/Receivers or their Agents Monday through Friday, between 08.00 and 17.00 hours
on all days except Saturdays, Sundays and Holidays and between 08.00 hours and 12.00 hours on Saturdays unless a Holiday Saturday 12.00 hours to Monday 0800 hrs EIU clause to apply both ends
. Such notice of readiness shall be delivered when Vessel is in the loading or discharging berth and in all respects ready to load/discharge. At both ends if the berth is congested/ unreachable Master has the right to tender N.O.R from the anchorage even by cable/tlx/fax/email and time to count whether in berth or not, whether in port or not, whether free pratique or not, whether customs cleared or not. At loading port Shippers/
Charterers or their Agents have the privilege to inspect Vessel's holds. If it requested by Charterers, a survey may be carried out at their time and risk to establish vessel's holds and hatch covers suitability to load bagged rice and Owners to have the right to be represented during such survey by their P&I Surveyors. and reject the notice when holds are not clean, dry, odourless and in all respects ready to receive the cargo.
In case of disagreement between the two surveyors then an independent surveyor (mutually agreed between Charterers' and the Owners P&I surveyor) to be appointed whose findings to be binding for both parties. In case any deficiency, then same to be promptly made good by the Owners and any time lost from the time of rejection till the time of acceptance not to count as laytime.
In case of dispute, an independent surveyor shall decide about Vessel's readiness to load, the party in the wrong bearing the costs. If the rejection of notice of readiness is undisputed or confirmed by surveyor the laytime will only start to count after the Vessel has validly tendered again

This document is a computer generated SYNACOMEX 2000 form printed by authority of SYNDICAT NATIONAL DU COMMERCE EXTERIEUR DES CEREALES (SYNACOMEX). Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original SYNACOMEX document shall apply. BIMCO and SYNACOMEX assume no responsibility for any loss, damage or expense as a result of discrepancies between the original SYNACOMEX document and this computer generated document.

**ORIGINAL**

PART II
"SYNACOMEX 2000" Continent Grain Charterparty

when ready, 112
Only when the loading and/or discharging berth is 113
unavailable, or Shippers or Receivers not ready to load/ 114
discharge Master may warrant that the Vessel is in all
respects ready and may tender notice of readiness to load 115
and/or discharge from any usual waiting place, whether in 116
port or not, whether in berth or not, whether in free pratique or not, 117
whether customs
cleared or not.
Laytime shall commence at 14.00-13.00 hours if notice of 118
readiness to load and/or discharge is validly tendered at or 119
before 12.00 hours and at 08.00 hours on the next working 120
day if notice of readiness is validly tendered after 12.00 121
hours. Time used before commencement of laytime shall 122
not count. At loading port Laytime shall not count between 12.00 123
hours on 124
Saturdays or 17.12..00 hours on days preceding a Holiday and 125
08.00 hours on Monday or the following working day, even if used. 126
At discharging port(s) laytime shall not count between 17.00
hours on Friday or 17.00 hours on the day preceding Holiday and
08.00 hours on Monday or the following working day, even if used.

unless used in
which case half-time actually used shall count.
Any delays caused by ice, floods, quarantine, or by cases 127
of "force majeure" shall not count as laytime unless the 128
Any delays caused by ice, floods, quarantine, or cases of "force 129
majeure" shall not count as laytime unless 120
Vessel is already on demurrage. Once on demurrage always on
demurrage but Charter Party exceptions always to apply (ie gear
breakdown/ crew and/ or officers strike, failure to pay any
disbursement accounts for Owners' account etc.
When Master has tendered notice of readiness to load or 131
discharge from a waiting place and Vessel is subsequently 132
found unready in application of the above provisions, laytime 133
or time on demurrage shall not count from the time the Vessel 134
is rejected until the time she is accepted. Additionally, any 135
actual time lost on account of Vessel's obtaining free pratique 136
or customs clearance shall not count as laytime or time on 137
demurrage.
At second or subsequent port(s) of loading or discharging, 138
laytime or time on demurrage shall resume counting from 139
Vessel's arrival at loading or discharging berth, if available, 140
or from Vessel's arrival at a usual waiting place, if berth is 141
unavailable. 142
At all ports any time lost shifting from waiting place to berth 143
shall not count as laytime or as time on demurrage. 144
145

9. Demurrage, Despatch Money
Demurrage is payable by Charterers at the rate stated in 146
Box 18 USD 8,000 per day pro rata half despatch laytime saved 147
both ends per day of 24 consecutive hours or pro rata. 148
Owners shall pay to Charterers despatch money for laytime
saved in loading/discharging at the rate stated in Box 18 149
per day of 24 consecutive hours or pro rata. 150
151

10. Seaworthy Trim
If ordered to be loaded or discharged at more than one 152
berth and/or port, the Vessel is to be left in seaworthy trim 153
to Master's reasonable satisfaction for the passage between 154
berths and/or ports at Shippers'/Charterers'/Receivers' 155
expense, and time used for placing Vessel in seaworthy 156
trim shall count as laytime or time on demurrage. 157
158

11. Fumigation See Clause 37
Charterers have the liberty to fumigate the cargo on board 159
at loading and discharging port(s) or places on route at 160
their risk and expense. Charterers are responsible for 161
ensuring that Officers and Crew as well as all other persons 162
on board the Vessel during and after the fumigation are not 163
exposed to any health hazards whatsoever. Charterers 164
undertake to pay Owners all necessary expenses incurred 165
because of the fumigation and time lost thereby shall count 166
167

as laytime or time on demurrage. When fumigation has 168
been effected at loading port and has been certified by 169
proper survey or by a competent authority, Bills of Lading 170
shall not be claused by Master for reason of insects having 171
been detected in the cargo prior to such fumigation. 172

12. Lights and Gear
Whenever required, Vessel shall supply free use of lights 173
as on board but sufficient to carry on night work. 174
Provided described as geared, Vessel, whenever required, 175
shall supply free use of all cargo handling gear on board, in 176
good working order, with the necessary power, and of 177
runners, ropes and slings as on board. Shore hands shall 178
be used to drive the gear, at Shippers'/Charterers'/ 179
Receivers' account. Any time actually lost on account of 180
breakdown of Vessel's gear shall not count as laytime or 181
time on demurrage and any stevedore standby time charges 182
incurred thereby shall be for Owners' account. The Gear's / Crane's 183
breakdown then laytime not to count but always on prorata basis. 184

13. Agencies
At loading port, Vessel shall be consigned to the Agents 185
designated in Box 47. See Clause 52 186
At discharging port, Vessel shall be consigned to the Agents 187
designated in Box 18. See Clause 52 188
189

14. Extra Insurance
Any Extra insurance on cargo due to Vessel's age and/or flag 190
and/or class and/or ownership shall be for Charterers' account 191
Owners' account but limited to the 192
amount specified in Box 19. Such extra insurance shall be 193
covered by Charterers for Owners' account and shall be 194
deducted from settlement of freight. 195

15. Brokerage
A brokerage commission as stated in Box 20 on the gross 196
amount of freight, deadfreight and demurrage earned, is 197
due to the party(ies) designated in Box 20 and is deductible 198
from same unless "non-deductible" has been specifically 199
agreed. 200
201

16. Address Commission
An address commission as stated in Box 21 on the gross 202
amount of freight, deadfreight and demurrage earned is 203
due to Charterers and is deductible from freight, deadfreight 204
and demurrage. 205
206

17. ISM Clause
From the date of coming into force of the International Safety 207
Management (ISM) Code in relation to the Vessel and 208
thereafter during the currency of this Charter Party, the 209
Owners shall procure that both the Vessel and "the 210
Company" (as defined by the ISM Code) shall comply with 211
the requirements of the ISM Code. Upon request the 212
Owners shall provide a copy of the relevant Document of 213
Compliance (DOC) and Safety Management Certificate 214
(SMC) to the Charterers. 215
Except as otherwise provided in this Charter Party, loss, 216
damage, expense or delay caused by failure on the part of 217
the Owners or "the Company" to comply with the ISM Code 218
shall be for the Owners' account. 219
220

18. Bills of Lading
The Master is to sign Bills of Lading as presented without 221
prejudice to the terms, conditions and exceptions of this 222
Charter Party. If the Master delegates the signing of Bills of 223
Lading to his Agents, but always to be in a strict conformity with 224
Mate's Receipts, he shall give them authority to do so 225
in writing, copy of which is to be furnished to Charterers.
When Bills of Lading marked "Freight prepaid" are required, 226
See clause 47. 227
Same shall be released by Owners immediately upon receipt 228

This document is a computer generated SYNACOMEX 2000 form printed by authority of SYNDICAT NATIONAL DU COMMERCE EXTERIEUR DES CEREALES (SYNACOMEX). Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original SYNACOMEX document shall apply. BIMCO and SYNACOMEX assume no responsibility for any loss, damage or expense as a result of discrepancies between the original SYNACOMEX document and this computer generated document.

3

**ORIGINAL**

## PART II
## "SYNACOMEX 2000" Continent Grain Charterparty

~~of a telex from Charterers' Bank confirming that freight~~ 229
~~payable has been irrevocably transferred.~~ 230

**19. Relet** 231
~~Charterers have the right to relet all or part of this Charter~~ 232
~~Party, they remaining responsible for its due fulfilment.~~ 233

**20. Deviation** 234
Deviation in saving or attempting to save life or property at 235
sea or for bunkering purposes or any other reasonable 236
deviation shall not be deemed an infringement of this 237
Charter Party and the Owners shall not be liable for any 238
loss or damage resulting therefrom. 239

**21. Lien Clause** 240
The Owners shall have a lien on the cargo for freight, 241
deadfreight, demurrage, and average contribution due to 242
them under this Charter Party. 243

**22. Responsibilities and Immunities** 244
Except as otherwise provided and stipulated in this Charter 245
Party, it is hereby expressly agreed that this Charter Party 246
shall have effect subject to the provisions of the Hague Rules 247
contained in the International Convention for the Unification 248
of certain rules relating to Bills of Lading, dated Brussels 249
the 25th August 1924, as enacted in the country of shipment. 250
These rules shall apply to any Bill of Lading issued under 251
this Charter Party. 252
When no such enactment is in force in the country of 253
shipment, the corresponding legislation of the country of 254
destination shall apply, but in respect of shipments to which 255
no such enactments are compulsorily applicable, the terms 256
of the said Convention shall apply. 257
In trades where the International Brussels Convention 1924 258
as amended by the Protocol signed at Brussels on February 259
23rd, 1968 – The Hague – Visby Rules – apply compulsorily, 260
the provisions of the respective legislation shall apply. 261
The Owners shall in no case be responsible for loss of or 262
damage to cargo howsoever arising prior to loading into 263
and after discharge from the Vessel. 264
Save to the extent otherwise in this Charter Party expressly 265
provided, neither party shall be responsible for any loss or 266
damage or delay or failure in performance hereunder 267
resulting from Act of God, war, civil commotion, quarantine, 268
strikes, lockouts, arrest or restraint of princes, rulers and 269
peoples or any other event whatsoever which cannot be 270
avoided or guarded against. 271

**23. Amended General Ice Clause** 272
*Port of Loading* 273
a) In the event of the loading port being inaccessible by 274
reason of ice when Vessel is ready to proceed from her last 275
port or at any time during the voyage or on Vessel's arrival 276
or in case frost sets in after Vessel's arrival, the Master for 277
fear of being frozen in is at liberty to leave without cargo, 278
and this Charter Party shall be null and void. 279
b) If during the loading the Master, for fear of Vessel being 280
frozen in, deems it advisable to leave, he has liberty to do 281
so with what cargo he has on board and to proceed to any 282
other port or ports with option of completing cargo for 283
Owner's benefit to any port or ports including port of 284
discharge. Any part cargo thus loaded under this Charter 285
Party to be forwarded to destination at Vessel's expense 286
but against payment of freight, provided that no extra 287
expenses be thereby caused to the Receivers, freight being 288
paid on quantity delivered (in proportion if lumpsum), all 289
other conditions as per Charter Party. 290
c) In case of more than one loading port, and if one or more 291
of the ports are closed by ice, the Master or Owners to be 292
at liberty either to load the part cargo at the open port and 293

fill up elsewhere for their own account as under section b) 294
or to declare this Charter Party null and void unless 295
Charterers agree to load full cargo at the open port. 296
*Port of Discharge* 297
a) Should ice prevent Vessel from reaching port of 298
discharge, Receivers shall have the option of keeping Vessel 299
waiting until the reopening of navigation and paying 300
demurrage, or of ordering the Vessel to a safe and 301
immediately accessible port where she can safely discharge 302
without risk of detention by ice. Such orders to be given 303
within 48 hours after Master or Owners have given notice 304
to Charterers of the impossibility of reaching port of 305
destination. 306
b) If during discharging the Master for fear of Vessel being 307
frozen in deems it advisable to leave, he has liberty to do 308
so with what cargo he has on board and to proceed to the 309
nearest accessible port where she can safely discharge. 310
c) On delivery of the cargo at such port, all conditions of 311
the Bill of Lading shall apply and Vessel shall receive the 312
same freight as if she had discharged at the original port of 313
destination, except that if the distance of the substituted 314
port exceeds 100 nautical miles, the freight on the cargo 315
delivered at the substituted port to be increased in 316
proportion. 317

**24. Amended Centrocon Strike Clause** 318
If the cargo cannot be loaded by reason of Riots, Civil 319
Commotions or of a Strike or Lock-out of any class of 320
workmen essential to the loading of the cargo, or by reason 321
of obstructions or stoppages beyond the control of the 322
Charterers caused by Riots, Civil Commotions or a Strike 323
or Lock-out on the Railways, in the Docks, or other loading 324
Places, or if the cargo cannot be discharged by reason of 325
Riots, Civil Commotions or of a Strike or Lockout of any 326
class of workmen essential to the discharge, the time for 327
Loading or discharging, as the case may be, shall not count 328
during the continuance of such causes, provided that a 329
Strike or Lock-out of the Shippers' and/or Receivers' men 330
shall not prevent demurrage accruing if by the use of 331
reasonable diligence they could have obtained other suitable 332
labour at rates current before the Strike or Lock-out. 333
In case of any delay by reason of the before-mentioned 334
causes, no claim for damages or demurrage shall be made 335
by the Charterers / Receivers of the cargo, or Owners of 336
the Vessel. For the purpose, however, of settling despatch 337
Money accounts, any time lost by the Vessel through any 338
of the above causes shall be counted as time used in loading 339
or discharging, as the case may be. 340

**25. General Average and New Jason Clause** 341
General average shall be adjusted according to the York- 342
Antwerp Rules 1994 or any subsequent modification thereof, 343
but where the adjustment is made in accordance with the 344
law and practice of the United States of America, the 345
following Clause shall apply: 346
"In the event of accident, danger, damage or disaster 347
before or after the commencement of the voyage, 348
resulting from any cause whatsoever, whether due to 349
negligence or not, for which, or for the consequence of 350
which, the carrier is not responsible, by statute, contract 351
or otherwise, the goods, shippers, consignees, or owners 352
of the goods shall contribute with the carrier in general 353
average to the payment of any sacrifices, losses or 354
expenses of a general average nature that may be made 355
or incurred and shall pay salvage and special charges 356
incurred in respect of the goods. 357
If a salving ship is owned or operated by the carrier, 358
salvage shall be paid for as fully as if the said salving 359
Ship or ships belonged to strangers. Such deposit as the 360

This document is a computer generated SYNACOMEX 2000 form printed by authority of SYNDICAT NATIONAL DU COMMERCE EXTERIEUR DES CEREALES (SYNACOMEX). Any insertion or deletion to this form must be clearly visible. In the event of any modification made to the pre-printed text of the document which is not clearly visible, the text of the original SYNACOMEX document shall apply. BIMCO and SYNACOMEX assume no responsibility for any loss, damage or expense as a result of discrepancies between the original SYNACOMEX document and this computer generated document.

PART II
"SYNACOMEX 2000" Continent Grain Charterparty

**ORIGINAL**

| | |
|---|---|
| carrier or his Agents may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the goods, shippers, consignees or owners of the goods to the carrier before delivery" and the Charterers shall procure that all Bills of Lading issued under this Charter Party shall contain the same Clause. | 361–367 |

### 26. Both-to-Blame Collision Clause

If the liability for any collision in which the Vessel is involved while performing this Charter Party falls to be determined in accordance with the laws of the United States of America, the following Clause shall apply:

"If the ship comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the master, mariner, pilot or the servants of the carrier in the navigation or in the management of the ship, the owners of the goods carried hereunder will indemnify the carrier against all loss or liability to the other or non-carrying ship or her owners in so far as such loss or liability Represents loss of or damage to or any claim whatsoever of the owners of the said goods, paid or payable by the other or non-carrying ship or her owners to the owners of the said goods and set off, recouped or recovered by the other or non-carrying ship or her owners as part of their claim against the carrying ship or carrier.

The foregoing provisions shall also apply where the Owners, Operators or those in charge of any ship or ships or objects other than, or in addition to, the colliding ships or objects are at fault in respect to a collision or contact"

and the Charterers shall procure that all Bills of Lading issued under this Charter Party shall contain the same Clause.

### 27. War risks ("Voywar 1993")

a) For the purpose of this Clause, the words:

(i) "Owners" shall include the shipowners, bareboat charterers, disponent-owners, managers or other operators who are charged with the management of the Vessel, and the Master; and

(ii) "War Risks" shall include any war (whether actual or threatened), act of war, civil war, hostilities, revolution, rebellion, civil commotion, warlike operations, the laying of mines (whether actual or reported), acts of piracy, acts of terrorists, acts of hostility or malicious damage, blockades (whether imposed against all vessels or imposed selectively against vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever), by any person, body, terrorist or political group, or the Government of any state whatsoever, which, in the reasonable judgement of the Master and/or the Owners, may be dangerous or are likely to be or to become dangerous to the Vessel, her cargo, crew or other persons on board the Vessel.

b) If at any time before the Vessel commences loading, it appears that, in the reasonable judgement of the Master and/or the Owners, performance of the Charter Party, or any part of it, may expose, or is likely to expose, the Vessel, her cargo, crew or other persons on board the Vessel to War Risks, the Owners may give notice to the Charterers cancelling this Charter Party, or may refuse to perform such part of it as may expose, or may be likely to expose, the Vessel, her cargo, crew or other persons on board the Vessel to War Risks; provided always that if this Charter Party provides that loading or discharging is to take place within a range of ports, and at the port or ports nominated by the Charterers the Vessel, her cargo, crew, or other persons onboard the Vessel may be exposed, or may be likely to be exposed, to War Risks, the Owners shall first require the Charterers to nominate any other safe port which lies within the range for loading or discharging, and may only cancel this Charter Party if the Charterers shall not have nominated such safe port or ports within 48 hours of receipt of notice of such requirement.

c) The Owners shall not be required to continue to load cargo for any voyage, or to sign Bills of Lading for any port or place, or to proceed or continue on any voyage, or on any part thereof, or to proceed through any canal or waterway, or to proceed to or remain at any port or place whatsoever, where it appears, either after the loading of the cargo commences, or at any stage of the voyage thereafter before the discharge of the cargo is completed, that, in the reasonable judgement of the Master and/or the Owners, the Vessel, her cargo (or any part thereof), crew or other persons on board the Vessel (or any one or more of them) may be, or are likely to be, exposed to War Risks. If it should so appear, the Owners may by notice request the Charterers to nominate a safe port for the discharge of the cargo or any part thereof, and if within 48 hours of the receipt of such notice, the Charterers shall not have nominated such a port, the Owners may discharge the cargo at any safe port of their choice (including the port of loading) in complete fulfilment of the Charter Party. The Owners shall be entitled to recover from the Charterers the extra expenses of such discharge and, if the discharge takes place at any port other than the loading port, to receive the full freight as though the cargo had been carried to the discharging port and if the extra distance exceeds 100 miles, to additional freight which shall be the same percentage of the freight contracted for as the percentage which the extra distance represents to the distance of the normal and customary route, the Owners having a lien on the cargo for such expenses and freight.

d) If at any stage of the voyage after the loading of the cargo commences, it appears that, in the reasonable judgement of the Master and/or the Owners, the Vessel, her cargo, crew or other persons on board the Vessel may be, or are likely to be, exposed to War Risks on any part of the route (including any canal or waterway) which is normally and customarily used in a voyage of the nature contracted for, and there is another longer route to the discharging port, the Owners shall give notice to the Charterers that this route will be taken. In this event the Owners shall be entitled, if the total extra distance exceeds 100 miles, to additional freight which shall be the same percentage of the freight contracted for as the percentage which the extra distance represents to the distance of the normal and customary route.

e) The Vessel shall have liberty:-

(i) to comply with all orders, directions, recommendations or advice as to departure, arrival, routes, sailing in convoy, ports of call, stoppages, destinations, discharge of cargo, delivery or in any way whatsoever which are given by the Government of the Nation under whose flag the Vessel sails, or other Government to whose laws the Owners are subject, or any other Government which so requires, or any body or group acting with the power to compel compliance with their orders or directions;

(ii) to comply with the orders, directions or recommendations of anywar risks underwriters who have the authority to give the same under the terms of the war risks insurance;

(iii) to comply with the terms of any resolution of the Security Council of the United Nations, any directives of the European Community, the effective orders of any other Supranational body which has the right to issue and give the same, and with national laws aimed at enforcing the same to which

This document is a computer generated SYNACOMEX 2000 form printed by authority of SYNDICAT NATIONAL DU COMMERCE EXTÉRIEUR DES CÉRÉALES (SYNACOMEX). Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original SYNACOMEX document shall apply. BIMCO and SYNACOMEX assume no responsibility for any loss, damage or expense as a result of discrepancies between the original SYNACOMEX document and this computer generated document.

ORIGINAL!

PART II
"SYNACOMEX 2000" Continent Grain Charterparty

| | |
|---|---|
| the Owners are subject, and to obey the orders and directions of those who are charged with their enforcement; | 494 |
| | 495 |
| (iv) to discharge at any other port any cargo or part thereof which may render the Vessel liable to confiscation as a contraband carrier; | 496 |
| | 497 |
| | 498 |
| (v) to call at any other port to change the crew or any part thereof or other persons on board the Vessel when there is reason to believe that they may be subject to internment, imprisonment or other sanctions; | 499 |
| | 500 |
| | 501 |
| | 502 |
| (vi) where cargo has not been loaded or has been discharged by the Owners under any provisions of this Clause, to load other cargo for the Owners' own benefit and carry it to any other port or ports whatsoever, whether backwards or forwards or in a contrary direction to the ordinary or customary route. | 503 |
| | 504 |
| | 505 |
| | 506 |
| | 507 |
| | 508 |
| f) If in compliance with any of the provisions of sub-clauses b) to e) of this Clause anything is done or not done, such shall not be deemed to be a deviation, but shall be considered as due fulfilment of the Charter Party. | 509 |
| | 510 |
| | 511 |
| | 512 |
| **28. Arbitration See clause 48** | 513 |
| ~~Any dispute arising out of the present contract shall be referred to Arbitration of "Chambre Arbitrale Maritime de Paris—16 rue Daunou—75002 Paris".~~ | 514 |
| | 515 |
| | 516 |
| ~~The decision rendered according to the rules of Chambre Arbitrale and according to French Law shall be final and binding upon both parties. The right of both parties to refer any disputes to arbitration ceases twelve months after date of completion of discharge or, in case of cancellation or non-performance, twelve months after the cancelling date as per Clause 6 or after the actual date of cancellation whichever is the later. Where this provision is not complied with, the claim shall be deemed to be waived and absolutely barred.~~ | 517 |
| | 518 |
| | 519 |
| | 520 |
| | 521 |
| | 522 |
| | 523 |
| | 524 |
| | 525 |

This document is a computer generated SYNACOMEX 2000 form printed by authority of SYNDICAT NATIONAL DU COMMERCE EXTÉRIEUR DES CEREALES (SYNACOMEX). Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original SYNACOMEX document shall apply. BIMCO and SYNACOMEX assume no responsibility for any loss, damage or expense as a result of discrepancies between the original SYNACOMEX document and the computer generated document.

6

**ORIGINAL**

<u>m.v. "CRUISER" Charter Party dated London 4th August 2006.</u>

*Clause 30*

MV. CRUISER (EX SIN HAI) Panama 1982 SDBC
27,019mt DWAT on 10.53m SSW
GRT/NRT -15,904/8,834
LOA/Beam -182.69/22.40metres
Grain 32,445cbm/bale 31281cbm
7ho/hatches
4Cr8tons
abt 11.kts on abt 18mt IFO (180Cst)+ abt 2.5mt MDO
Port cons: abt 3.5mt MDO daily Working/2.5 IDLE
ada
Class   - HELLENIC
P&I Club  - SOUTH OF ENGLAND

Details W.O.G

Owners guarantee that there are no outstanding recommendations of class for the duration of this voyage.

*Clause 31*

Vessel is suitable for loading of bagged rice which is to be loaded in main holds only.

*Clause 32*

Laytime to be non reversible between load and discharge ports respectively.

*Clause 33*

Delete

*Clause 34*

Lightening at loading/discharging port to be for Shippers/Receivers' time, expense and risk. Shippers/Receivers to supply sufficient fenders for lightening operations. All time for lightening operation will continue to count as laytime.

*Clause 35*

At load and discharging port(s) any time occupied is shifting from the place at anchorage or layberth to loading/discharging (berths) not to count unless vessel is already on demurrage.

1

7

FROM :                          FAX NO. : 65 63244450           Dec. 06 2006 04:09PM P8



m.v. "CRUISER" Charter Party dated London 4th August 2006.

**ORIGINAL**

*Clause 36*

At load and discharge ports first opening/last closing of hatches to be at Owners' time, risk and expense. If shore regulations do not permit the crew to open/close hatches then Shippers/Receivers to provide shore labour to perform these operations at their experience and time used to count.

*Clause 37*

If required, vessel to give free of derricks and power to drive them gear, runners, ropes and slings, as on board. Shore winchmen to be employed and same to be for Shippers'/Receivers' account. Vessel to give free use of lights as on board if required for night work. Owners guarantee that the vessel has sufficient cranes in good working order and is properly equipped to load/discharge cargo. Should it be found that the vessel is unable to load/discharge owing to crane and/or equipment not working properly in loading/discharging port, extra time and/or expenses incurred to be for Owners' account, but only in relation to the number of cranes affected.

*Clause 38*

Owners/ Master certify the vessel is in all respects capable and agreeable to 'in sea transit fumigation' as far as a vessel her type can be, with approved products such as aluminum phosphine/ fostoxin, or any other approved products. However if charts use different materials and local authorities require crew to stay ashore, then all related expenses including victualling/ transportation/accommodation to be for Charterers acct and time to count as laytime.

*Clause 39*

Overtime to be for account of party ordering same, but if ordered by Port Authorities or elevator then same to be for Shippers'/Receivers' account. Officers and crew's overtime always to be for Owners' account.

*Clause 40*

On sailing from loading port Master to telex (to be advised) giving cargo quantity loaded/number of bags/ETA discharging port.

*Clause 41*

This fixture to remain private and confidential.

*Clause 42*

2

**ORIGINAL**

<u>m.v. "CRUISER" Charter Party dated London 4th August 2006.</u>

*In order to protect cargo, Owners to supply and lay at Owners time and expenses bamboo sticks/mats/plastics/kraft paper or equivalent suitable material provided same accepted by port's regulation.*

*Vessel to be clean and suitable to load bagged rice, dunnage or craft paper for Owners' account as required to Shippers surveyors satisfaction. Dunnage to be ordered and paid by Owners but laid by Stevedores at their time.*

Clause 43

*Both at loading and discharging ports, crew tally to be for Owners account. Shore side tally and/or barge tally to be for Shippers respectively Receivers account. Owners to submit to Charters tally findings signed by master and/or authorised by Owners P+I club both at loading and at discharging ports. Same to be done before vessel sails last port of discharge.*

Clause 44

*Owners to authorise agents to issue clean Bills of Lading in accordance with Mate's receipts.*

*Master to issue clean Mate's receipts and Bills of Lading. Master has the right to reject any damaged/ torn cargo bags and Charterers/ Shippers to replace same by sound ones at Charterers/ Shippers time and account.*

Clause 45

*Owners confirm vessel will sail directly to the discharging ports without any deviation after completion of loading always excepting any deviation en route for bunkering calls or emergencies that may arise.*

Clause 46

*Owners guarantee that vessel has not suffered any General Average in the past 24 months.*

Clause 47

*If required by the Charterers, Owners to discharge cargo without receipt of Original Bills of Lading against Charterers' Letter of Indemnity (no bank countersignature). Letter of Indemnity wording as per usual P and I Club wording. However Charterers undertake to furnish Owners earliest possible with full set of Original Bills of Lading.*

Clause 48 – Freight Payment

3

### m.v. "CRUISER" Charter Party dated London 4th August 2006.

100% of freight payable less 3,75% commission (2.5% Sundersons + 1,25% Anglomar Shipping Ltd) and less dispatch respectively plus demurrage, if any at loading port, within 3 Banking Days from and signing and releasing Bill(s) of Lading marked "Freight payable as per C/P dated...". Incase Charterers requested Bill(s) of Lading marked 'Freight Prepaid" same to be held in custody of load port Agents and shall be released only after Owners Bank confirmation that freight has been received irrevocably.

Demurrage/ Dispatch to be settled within 30 days after completion of voyage.

Full freight deemed earned pro-rata as cargo being loaded, discountless and not returnable vessel and / or cargo lost or not lost

Freight to be paid directly into Owners following Bank account: to be advised

### Clause 49

The Owners represent and warrant that:-

1) It is not Owned or controlled by Libya, North Korea or Iraq
2) The vessel is not Owned or controlled by Libya, Cuba, North Korea or Iraq or any nationals thereof, it is not registered under the laws thereof, and is not Chartered to, or crewed by any nations thereof.
3) The vessel is not engaged in trade with Cuba (i.e. not carrying any goods in which Cuba or Cuban national has an interest). The Owners acknowledges that the forgoing representations and warrants are of a continuing nature and Owners agree to indemnify and hold harmless Charterers for all costs, losses and liabilities arising from any breach of these representations and warranties.

### Clause 50 – Arbitration Clause:

Should any dispute arise between Owners and Charterers, the matter in dispute shall be referred to three (3) persons in London, one to be appointed by each of the parties hereto and the third by the two chosen: their decision or that of any two of them shall be final and for the purpose of enforcing any award, this agreement may be a rule of the court. The Arbitrators shall be commercial men.

### Clause 51

Owners/Master warrant that they will take all necessary measures and precautions to protect the cargo from rain or other damage caused by failure to close vessel's McGregors hatches timely.

4

ORIGINAL

<u>m.v. "CRUISER" Charter Party dated London 4th August 2006.</u>

(3) The Master shall not be required to load cargo or continue loading or to proceed on or to sign Bill(s) of Lading for any adventure on which or any port at which it appears that the Vessel, her Master and crew or her cargo will be subjected to war risks. In the event of the exercise by the Master of his right under this Clause after part or full cargo has been loaded, the Master shall be at liberty either to discharge such cargo at the loading port or to proceed therewith. In the latter case the Vessel shall have liberty to carry other cargo for Owners' benefit and accordingly to proceed to and load and discharge such other cargo at any other port or ports whatsoever, backwards or forwards, although in a contrary direction to or out of or beyond the ordinary route. In the event of the Master electing to proceed with part cargo under this Clause shall in any case be payable on the quantity delivered.

Voywar 1950

(4) If at the time the Master elects to proceed with part or full cargo under Clause 3 or after the Vessel has left the loading port, or the last of the loading ports, if more than one, it appears that further performance of the last of the loading ports, if more than one, it appears that further performance of the contract will subject the Vessel, her Master and crew or her cargo, to war risks, the cargo shall be discharged, or if the discharge has been commenced shall be completed, at any safe port in vicinity of the port of the discharge as may be ordered by Charterers. If no such orders shall be received from the Charterers within 48 hours after the Owners have despatched a request by telegram to the Charterers for the nomination of a substitute discharging port, the Owners shall be at liberty to such discharge the cargo at any safe port which they may, in their contract of affreightment in the event of cargo being discharged at any such other port, the Owners shall be entitled to freight as if the discharge had been effected at the port or ports named in the Bill(s) of Lading or to which the Vessel may have been ordered pursuant thereto.

(5) (a) The Vessel shall have liberty to comply with any directions or recommendations as to loading, departure, arrival, routes, ports of call, stoppages, destination, zones, waters, discharge, delivery or in any other wise whatsoever (including any direction or recommendation not to go to the port of destination or to delay proceeding thereto or to proceed to same other port) given by any other Government or by any belligerent or by any organised body engaged in civil war, hostilities or warlike operations or by any person or body acting or purporting to act as or with the authority of any Government or belligerent or of any such organised body or committee or person having under the terms of the war risks insurance on the Vessel, the right to give any such directions or recommendations. If by reason of or in compliance with any such

7

/1



### m.v. "CRUISER" Charter Party dated London 4th August 2006.

**Clause 52**

Any taxes dues on vessel to be for Owners account. Any taxes/dues/wharf/commissions on cargo to be for Charterers account.

Over Age Premium to be for Charterers account.

Indian freight tax to be for Owners account.

**Clause 53**

Owners paying load port disbursements account.
At discharging port vessel's D/A to be for Charterers' account and following clause to apply:

At discharging port the Charterers to appoint their nominated Agents and to be responsible for the payment of all disbursement expenses and any other charges incurred for enabling the vessel to use the port and berths for the purposes of discharging the cargo - which include but are not limited to costs such as agency fees, tugs, pilotage charges, port dues, canal costs, light dues, boatage, authorities fees, sundries, comms. etc. as well as all taxes a/o dues a/o wharfages a/o peages a/o quay dues a/o berthing taxes, whether all herein stated items are charged on vessel and/or freight and/or cargo, and any other compulsorily charged items, to be for Charterers' account. This sum to exclude any normal crews' matters which to be for Owners' account and covered directly by Owners.

Charterers Agents both ends: to be advised

Charterers undertake to obtain and provide to owns vessel's 'S.E.N.' no for entering Nigerian waters

**Clause 54**

Additional clause to apply for Yemen and Nigeria:

In the event of any alleged cargo claims/shortages Charterers/ Receivers are to accept Owners' Pandi Club Letter of Guarantee/ bond only. No cash settlement to be allowed whatsoever. Owners Pandi Club is South of England.

If vessel is not released then immediately vessel goes on detention at USD 12,000 per day pro rata plus costs of bunkers consumed and any other directly related costs until vessel is released.

**Clause 55**

**ORIGINAL**

<u>m.v. "CRUISER" Charter Party dated London 4th August 2006.</u>

If it is requested by Charterers, a survey may be carried out at their time and risk and expense to establish vessel's holds and hatch covers suitability to load bagged rice and Owners to have the right to be represented during such survey by their P&I surveyors. In case of disagreement between the two surveyors then an independent surveyor to be appointed whose findings to be binding for both parties. In case of any deficiency, then same to be promptly made good by the Owners and any time lost from the time of rejection till the time of acceptance not to count as laytime.

Clause 56.
At loading port holds and all access to holds to be sealed in the presence of the master/shippers. At discharging port same to be opened in the presence of the master/receivers, time to count till completion of unsealing.

Charterers and receivers will indemnify Owners for any pilferage declared by Master at the end of each day of discharge and signed by the P+I club.

USA Clause Paramount:

This Bill of Lading shall effect subject to the provisions of the carriage of goods by Sea Act of the United States, approved April 16, 1936, which shall be deemed to be incorporated herein and nothing herein contained shall be deemed a surrender by the carrier of any of its rights or immunities or an increase of any of its responsibilities or liabilities under said act, if any term of this Bill of Lading be repugnant to said act to any extent such terms shall be void to that extent, but no further.

P and I Bunker Deviation Clause

This vessel, in addition to all other liberties, shall have the liberty as part of the contract voyage and at any stage thereof to proceed to any port whatsoever, whether such ports are on or off the direct and/or customary route or routes, to the ports of loading or discharge named in the Charter, and there take oil bunkers in any quantity in the direction of the Owners, even to the full capacity of fuel tanks, deep tanks and any other compartment in which oil can be carried, whether such amount is or is not required for the Chartered voyage.

Voywar 1950

(1) In these clauses "War Risks" shall include any blockade or any action which is announced as a blockade by any Government or by any belligerent or by any organized body, sabotage, piracy, and any actual or threatened war, hostilities, warlike operations, civil war, civil commotion, or revolution.

(2) If at any time before the Vessel commences loading, it appears that performance of the contract will subject the Vessel or her Master and crew or her cargo to war risks at any stage of the adventure, the Owners shall be entitled by letter or telegram despatched to the Charterers, to cancel this Charter.

6

17

**ORIGINAL**

<u>m.v. "CRUISER" Charter Party dated London 4th August 2006.</u>

direction or recommendation, anything ids done or is not done, such shall not be deemed a deviation.

(b) If, by reason of or in compliance wiyh any such directions or recommendations, the Vessel does not proceed to the port or ports named in the Bill(s) of Lading or to which she may have been ordered pursuant thereto, the Vessel may proceed to any port as directed or recommended or to any safe port which the Owners in their discretion may decide on and there discharge the cargo. Such discharge shall be deemed to be due fulfilment of the contract of affreightment and the Owners shakk be entitled to freight as if discharge had been effected at the port or ports named in the Bill(s) of Lading or to which, the Vessel may have been ordered pursuant thereto.

(6) All extra expenses (including insurance costs) involved in discharging cargo at the loading port or in reaching or discharging the cargo at any port as provided in Clauses 4 and 5 (b) hereof shall be by the Charterers and/or cargo owners, and the Owners shall have a lien on the cargo for all moneys due under these Clauses.

UNIVERSAL NAVIGATION (PTF) LTD

_[signature]_

<u>THE OWNERS:</u>                                   <u>THE CHARTERERS:</u>

8

14