# EXHIBIT "D"

**IN THE HIGH COURT OF JUSTICE**                                    2006    NO

**QUEEN'S BENCH DIVISION**

**COMMERCIAL COURT**

**IN THE MATTER OF THE ARBITRATION ACT 1996**

**AND IN THE MATTER OF AN INTENDED ARBITRATION**

CRUISER SHIPPING PTE LIMITED
UNIVERSAL NAVIGATION PTE LIMITED

**Claimants**

-and-

SUNDERSONS LIMITED

**First Defendants**

MILAN NIGERIA LIMITED

**Second Defendants**

MIDLAND CENTURY LLC

**Third Defendants**

VIKRAM VALECHHA

**Fourth Defendant**

RAJESH VALECHHA

**Fifth Defendant**

---

FIRST WITNESS STATEMENT OF NICHOLAS GEORGE PARTON

---

I Nicholas George Parton of 5th floor, 18 Mansell Street, London E1 8 AA, Solicitor, say

1

as follows:

## INTRODUCTION:

1. I am a partner in the firm Jackson Parton of the above address and I have the conduct of this matter on behalf of the Claimants. I am duly authorised to make this witness statement in support of the Claimants' application for an anti-suit injunction against the Defendants.

2. In so far as the contents of this witness statement are within my own knowledge, they are derived from my conduct of this matter on behalf of the Claimants and are true. Insofar as they are not within my own knowledge, they are derived from information, documents and verbal instructions given to me by Mr Neil Bell and Mr Julian Wade who are British Zurich based Directors of the managers of the South Of England Protection and Indemnity Association (Bermuda) Limited P & I Club ("the Club") ; Mr Graham Ashley of ETIC, the Clubs West African correspondents; and Captain Zahid Muneer claims manager of the owners of the ship involved in this matter the "Cruiser" ("the vessel") and are true to the best of my information and belief.

3. In this statement I will refer to two consecutively paginated bundles of copy documents marked "NGP 1", "NGP 2" and "NGP 3". Unless stated otherwise, references to page numbers in square brackets in this statement are references to page numbers of those bundles. "NGP 1" contains the relevant contractual documentation and copies of the Club letter offered as security; "NGP 2 contains the Nigerian (Port Harcourt) arrest papers; and "NGP 3" contains relevant correspondence.

## BACKGROUND

4. The Claimants are respectively the registered owners and disponent owners of the Vessel which was voyage chartered to the first defendants [pages 1 to 14] who are in the same group of companies as the second defendants who allege themselves to be

the receivers of the cargo [page 43A para 5]. They were also the notify party in the some but not all of the bills of lading [pages 15 to 34]. They and the first defendants have arrested the vessel in Port Harcourt Nigeria [pages 37 to 43 C].

5. The third defendants are the London entity of the Milan Group of companies at the offices of which, its main director, the fourth Plaintiff, who is also a director of the first and second defendants works and from which he together with his brother and co-director, the fifth defendant is masterminding the action and attempted extortion/blackmail in this case. These are words which I do not use lightly but I believe them to be justifiably used in this matter for reasons which I will set out below.

6. The vessel carried about 23,000 metric tons of bagged rice and 1400 empty bags from Kakinada Port, India in respect of which twenty bills of lading numbered C-01 to C20 were issued bearing three different dates: 30 August 2006, 9 September 2006 and 12 September 2006. She incurred demurrage of $55,816.67 [pages 79 to 81] a figure which is not believed to be in dispute. Freight which was due under the charterparty was paid some 21 days late on 5 October and the load port demurrage has still not been paid despite being due since 15 September 2006 (three days after completion of loading). The vessel berthed at the first discharge port, Lagos on 24 October having arrived on 19 October. She arrived at Port Harcourt also in Nigeria, on or about 6th November and completed discharge on 5th December incurring total discharge port demurrage for both ports of US$36,755.56 [pages 82 to 84]. The defendants prevented the departure of the vessel by blocking the necessary clearances and then, after the vessel would otherwise have departed, arrested the vessel on 6th December by order of the Federal High Court of Nigeria Port Harcourt Judicial Division [pages 37 to 43C].

7. Through broker channels a demand for payment of US$ 198,987.60 was made [pages 46 and 47]. Captain Zahid obtained the alleged discharge figures from the master

3

[page 48]. These show that according to the P & I Club survey (carried out by the respected company ETIC) there was no shortage claim when compared to the cargo manisfest.

8. Correspondence by email continued with owners offering their P & I Club letter or to settle the alleged cargo claim for $40,000 being the deductible under the P & I policy with the Club [page 49]. On 7 December owners sent the message at page 50 to their P & I brokers to set in train the provision of a club letter. A club letter was issued on 8th December [page 35 and 36] and was offered to the defendants by a Mr Vinod Halai of Pandi Ship the Club's Lagos correspondents on 9th December 2006. Messrs ETIC who had carried out the discharge tallies for the P & I Club also made contact with the first and second defendants. Mr Ashley reported the result in his emails at pages 54 to 56. In telephone calls to Captain Zahid Muneer at the claimants' office in Singapore Nair of the first and second defendants the brokers to the fixture acting as middlemen effectively continued to pass on the cash demands of the defendants and the final "deal" was that the defendants would accept $70,000 to be paid into an account in Switzerland and the written agreement of the claimants to forgo their demurrage. All for a claim which ETIC advise is in reality worth nothing.

9. The Court will note that clause 54 of the charterparty, which binds the second defendant directly and the first defendant by virtue of its incorporation into the bills of lading provides:

"In the event of any alleged cargo claim/shortages Charterers/Receivers are to accept Owners' Pandi Club Letter of Guarantee/bond only. No cash settlement to be allowed whatsoever. Owners Pandi Club is South of England.

If vessel is not released then immediately vessel goes on detention at USD12,000 per day pro rata plus costs of bunkers consumed and any other directly related costs until vessel is released"

10. The Statement of Claim in the Nigerian proceedings rambles somewhat but it appears clear that by some means or other those applying to the court are seeking to tear up the London arbitration clause in both the charterparty and bills of lading and to seek a

4

judgement or order for payment of cash by the second claimants.

11. On 22 ETIC advised the Club that in their opinion the worst possible potential claim for Lagos based on CIF value amounted to $98,000 [[page 49]. Later that day ETIC replaced by a bank guarantee within 30 days.

## THE CHARTERPARTY AND BILLS OF LADING

24. All of the Bills of Lading are on the CONGENBILL 1994 Form and clearly state "Freight payable as per CHARTERPARTY dated 04.08. 2006" and "FOR CONDITIONS OF CARRIAGE SEE OVERLEAF" pages [15 to 34]. A blank congenbill wording "overleaf" i.e. page 1 thereof is at page [15A]. I am advised by Captain Muneer that the actual bills of lading were not materially altered. As usual the Conditions of Carriage included:

"(1) All terms and conditions, liberties and exceptions of the Charter Party, dated as overleaf, including the Law and Arbitration Clause, are herewith incorporated."

25. The charterparty contains a London arbitration clause, clause 50 [page 10] which provides:

"Should any dispute arise between Owners and Charters, the matter in dispute shall be referred to three (3) persons in London, one to be appointed by each of the parties hereto and the third by the two so chosen: their decision or that of any two of them shall be final and for the purpose of enforcing any award, this agreement may be a rule of the court.
The Arbitrators shall be commercial men."

26. The charterparty terms (including the arbitration clause) were accordingly, I respectfully submit, plainly incorporated in the Bills of Lading.

27. I believe that by virtue of the London arbitration clause both the charterparty and the

5

bills of lading are subject to English law.

## THE SCOPE OF THE ARBITRATION AGREEMENT

28. The Defendants' alleged claims fall within the scope of the arbitration agreement in the Charterparty as incorporated in the Bills of Lading.

29. I believe that the Defendants' attempt to pursue these claims against the Claimants outside London and their ill-disguised attempts to blackmail the Claimants to agree to Nigerian jurisdiction or to pay the claim constitute a breach of contract and oppressive and/or vexatious conduct because:-

    a) the Claimants and their P&I Club have offered to secure the alleged claims even for the speculative amount claimed with a Club Guarantee with English law and arbitration and

    b) the sole purpose of the arrest and the Defendants' refusal even to negotiate release of the vessel against a club LOU is to bully and/or blackmail the Claimant into agreeing Nigerian jurisdiction and law or into paying the claim by way of settlement.

30. The Claimants decline the Defendants' invitation to submit to the jurisdiction of any court or tribunal other than London arbitration as per the terms of the Bills of Lading.

## SERIOUS ISSUE TO BE TRIED AND REASONABLE PROSPECT OF SUCCESS

31. I believe that there is a serious issue to be tried on the merits and that the Claimant has a reasonable prospect of success and/or good arguable case in its claim for an anti-suit injunction against the Defendants and in respect of delay to the vessel. In my respectful submission, the pursuit of foreign proceedings in respect of a claim which should be made in London arbitration is in breach of the London arbitration

agreement and justifies the granting of an injunction to restrain such proceedings unless good reason can be shown to the contrary.

32. I believe that the Claimant's claim falls within CPR 6.20 rule 5, because the claim is made in respect of a contract governed by English Law and providing for English jurisdiction (albeit arbitral) to determine any claim in respect of the contract.

## GROUNDS FOR REQUEST FOR PERMISSION TO ISSUE AND SERVE OUT OF THE JURISDICTION

33. The grounds upon which I ask this Court to grant permission to serve the Order, Application Notice and evidence in support and any Claim Form in this matter out of the jurisdiction are that:

    a. pursuant to section 44(2) (e) of the Arbitration Act 1996 and/or section 37 of the Supreme Court Act 1981 the Court has, for the purposes of arbitral proceedings, the same power of making orders as in relation to court proceedings for matters relating to the granting of an interim injunction; and

    b. pursuant to Part 6.20 (18) of the White Book this claim is made under an enactment specified in the relevant practice direction, Part 62.5 (1)(c), namely that the Claimant seeks a remedy affecting an arbitration (whether started or not) and the seat of the arbitration is or will be within the jurisdiction.

33. The bills of lading issued incorporate the charterparty terms including the arbitration clause. Given that the charterparty and Bills of Lading provide for London arbitration any anti-suit injunction will be in support of London arbitration. Therefore I believe that this is an arbitration application under section 44 of the Arbitration Act 1996 and,

7

as such, it falls outside the scope of EU Regulation 44/2001.

34. The Defendant's addresses outside the jurisdiction are:

   a. the first Defendant's address is Plot 243B Kofo Abayomi Street, Victoria Island, Lagos, Nigeria; their fax number is (00234) 1 2614290/2626339; their email is info@milannigeria.com
   b. the second defendants' address is 52A , Victoria Island, Lagos, Nigeria;
   c. the fourth Defendant's address is , Lagos, Nigeria.
   d. the fifth

35. For the reasons given above I believe that the Claimant's claim has reasonable prospects of success. Accordingly, I request that the Claimant be given permission to serve the claim documents on the Defendants out of the jurisdiction at the addresses set out above or elsewhere that the Defendants may be found.

## GROUNDS FOR REQUEST FOR AN ORDER FOR SUBSTITUTED SERVICE

36. Service on the Defendants in Nigeria would take a very long time and would be impractical. In view of the importance of this application (being one for an anti-suit injunction) I submit that this an appropriate case to ask for the Court's permission pursuant to Part 6.8 to effect service on all of the defendants by serving any one of them by fax or e-mail as set out in the draft Order or in such other manner as the Court sees fit.

## URGENCY AND ARE DAMAGES AN ADEQUATE REMEDY

37. The vessel is being delayed and she is losing earnings of at least $12,000 per day (the time charter equivalent of the current voyage charterparty) plus cost of gas oil per day as well as additional accruing port charges, agency fees and other such expenses It is also impossible for her owners to plan her next fixture properly whilst she is

arrested with no end in sight with, realistically, nothing short of payment of the defendants' alleged claim preventing that.

38. In these circumstances I believe that damages are not an adequate remedy for the Claimant in respect of the breaches of the arbitration agreement and I believe that, subject to a Club letter being provided in appropriate terms approved by this court, the Claimant should be granted an injunction restraining the Defendants from continuing any proceedings of any kind in the Courts in Nigeria or commencing proceedings of any kind anywhere in respect of any claim arising out of the Bills of Lading (whether in their own name or that of any other cargo interests) otherwise than by arbitration proceedings in London and I would respectfully ask the Court to grant the same.

## UNDERTAKING IN DAMAGES

39. I confirm that the Claimants have instructed me to give the undertaking on its behalf.

## CONCLUSION

40. For the above reasons I submit believe that the Claimant has a reasonable prospect of success.

I believe that the contents of this witness statement are true.

Signed_____

Dated:

## APPLICATION NOTICE

| IN THE | High Court of Justice<br>Queens Bench Division<br>Commercial Court<br>Royal Courts of Justice |
|---|---|
| **CLAIM NO** | 2006 No: |
| **CLAIMANTS** | CRUISER SHIPPING PTE LIMITED<br>UNIVERSAL NAVIGATION PTE LIMITED |
| **DEFENDANTS** | (1) SUNDERSONS LIMITED<br>(2) MILAN NIGERIA LIMITED<br>(3) MIDLAND CENTURY LLC |
| **DATE** | 14 December 2006 |

- You must complete Parts A and B, and Part C if applicable

- Send any relevant fee and the completed application notice to the Court with any draft order, witness statement or other evidence

- It is for you (and not the Court) to serve this application notice

**You should provide this information for listing the application**

Time Estimate: Hrs 15 Mins
Is this agreed by all parties? ~~Yes~~/ No

Please always refer to the Commercial Court Guide for details of how applications should be prepared and will be heard, or in a small number of exceptional cases can be dealt with on paper.

**Part A**

CRUISER SHIPPING PTE LIMITED and UNIVERSAL NAVIGATION PTE LIMITED (the Applicants)[1]
**intends to apply for an order** (a draft of which is attached) that the Defendants be prohibited from continuing, instigating or commencing proceedings whether in rem or otherwise or from arresting or detaining in any way the vessel "CRUISER" for claims arising from alleged shortage/damage to cargo carried under Bills of Lading C1 to 20 dated 30.08.2006, 09.09.2006 and 12.09.2006 from Kakinada Port, India to Port Harcourt, Nigeria and discharged there in November and December 2006

**for the reasons** set out in the statement of Mr. Nicholas George Parton dated 14 December 2006 and the exhibit thereto, namely, in essence, that the Defendants having arrested the Vessel in Port Harcourt, Nigeria are insisting on Nigerian law and jurisdiction and/or on immediate cash payment of their alleged claims as opposed to a P & I Club letter guaranteeing a London arbitration with a view to depriving the Claimants of their rights to have claims under the said bills of lading arbitrated in London.

**Part B**

---
[1] Where there is more than one Claimant or Defendant specify which Claimant or Defendant.

The Claimant wishes to rely on:-
*tick one*

The statement of Nicholas George Parton dated 14 December 2006 and the exhibit thereto ✓

evidence in **Part C** overleaf in support of this application

| **Signed** |  | **Position or office held** | Partner |

(Claimant)(Solicitor)            (if signing on behalf of firm, company or corporation)

Address to which documents about this claim should be sent (including reference if appropriate)[2]

| JACKSON PARTON, 18 MANSELL STREET, LONDON, | | If applicable | |
|---|---|---|---|
| | | Tel. No | 020-7702-0085 |
| | | Fax No | 020-7702-0858 |
| | | DX No. | |
| Postcode | E1 8AA | e-mail | mail@jacksonparton.com  n.parton@jacksonparton.com |

---

[2] If you are not already a party to the proceedings, you must provide an address for service of documents.

**Part C.**

Claim No

(**Note: Part C should only be used where it is convenient to enter here the evidence in support of the application, rather than use witness statements or affidavits**)

The Applicant wishes to rely on the following evidence in support of this application:-

Please refer to the statement of Nicholas George Parton dated 14 December 2006

**Statement of Truth**

*I believe/ The applicant believes that the facts stated in this application notice are true.
*I am duly authorised by the applicant to sign this statement.
Full name......NICHOLAS GEORGE PARTON..........................
Name of *Applicant's Solicitor...JACKSON PARTON...............

**Signed**

**Position or office held**
(if signing on behalf of firm, company or corporation)     PARTNER

**Date**   14 December 2006
*delete as appropriate

<u>**IN THE HIGH COURT OF JUSTICE**</u>                                     2006   NO

<u>**QUEEN'S BENCH DIVISION**</u>

<u>**COMMERCIAL COURT**</u>

Before the Honourable Mr

<u>**IN THE MATTER OF THE ARBITRATION ACT 1996**</u>

<u>**AND IN THE MATTER OF AN INTENDED ARBITRATION**</u>

CRUISER SHIPPING PTE LIMITED
UNIVERSAL NAVIGATION PTE LIMITED

<u>**Claimants**</u>

-and-

SUNDERSONS LIMITED

<u>**First Defendants**</u>

MILAN NIGERIA LIMITED

<u>**Second Defendants**</u>

MIDLAND CENTURY LLC

<u>**Third Defendants**</u>

---

INJUNCTION

---

PENAL NOTICE

If you the within named SUNDERSONS LIMITED, MILAN NIGERIA LIMITED, MIDLAND CENTURY LLC disobey this order you may be held to be in contempt of court and fined or your assets seized or your directors liable to imprisonment or a fine.

IMPORTANT NOTICE TO THE DEFENDANTS

You should read the terms of the Order and Guidance Notes very carefully. You are advised to consult a Solicitor as soon as possible.

This Order prohibits you, the Defendants from continuing, instigating or commencing proceedings whether in rem or otherwise or from arresting or detaining in any way the vessel "CRUISER for claims arising from alleged shortage/damage to cargo carried under Bills of Lading C1 to 20 dated 30 August 2006, 9 September 2006 and 12 September 2006 from Kakinada Port, India to Port Harcourt and discharged there in November and Decmber 2006 ("the claims and bills of lading") in any jurisdiction other than before a London arbitration tribunal.

If you disobey this Order you may be found guilty of Contempt of Court and may be sent to prison or fined. In the case of a Corporate Respondent, it may be fined, its Directors may be sent to prison or fined or its assets may be seized.

## THE ORDER

Upon hearing the Solicitor for the Claimants and reading the documents referred to in schedule 1 below and upon the Claimants by their Solicitor giving the undertakings set out in schedule 2 to this order and upon the Claimant undertaking to hold to the order of the First Defendants and to deliver to the First Defendants upon demand the original of an undertaking in the form signed and dated by the judge (the "Club letter of 8th December 2006") initialled copy attached : -

**IT IS ORDERED** that until further Order of the Court

### 1. THE RESPONDENTS MUST

(1) immediately take such steps as may be necessary to secure the cancellation of any Order of the Court in Port Harcourt or elsewhere in Nigeria pursuant to which the vessel "CRUISER" has been or may be arrested and detained at the port of Port Harcourt or elsewhere in Nigeria;

(2) not take any further steps in any such proceedings other than such steps as are necessary in accordance with paragraph 1. (1) of this order ;

(3) not commence or continue any proceedings in respect of the claims and bills of lading otherwise than before a London arbitration tribunal under the terms of the Bills of Lading.

### 2. SERVICE OUT OF THE JURISDICTION

(1) the Claimants have permission to serve the application notice dated 13 December 2006, this order and the First Witness Statement of Nicholas George Parton and the Claim Form out of the jurisdiction on the first and second defendants in Nigeria or wherever they be found;

(2) the Claimant have permission to serve the documents referred to in paragraphs (1) to (3) above and all further documents in these proceedings on the First and Second Defendants by courier or first class post or by fax at their fax numbers in Nigeria or by email to vikramvalechha@midlandcentury.com or by email to rajeshvalechha@milannigeria.com or by email to operations@milannigeria.com; or to Gandi@milannigeria.com or any solicitors appointed to act on their behalf

       and documents so served shall be deemed to have been served on the second day after they were dispatched by post or the day they were sent by fax or email as the case may be;

(3)    The period within which the Defendants may acknowledge service or file an admission be 21 days after service on them of the Claim Form, and if they acknowledge service the time within which they may file a defence be 35 days after service on them of the Claim Form.

## 3. LIBERTY TO APPLY

The Defendants may apply to set aside or vary this order on 2 working days notice to the Claimants' solicitors at the address/fax/email address given at the end of this order.

## 4. THE COSTS OF THE APPLICATION

The costs of the application are reserved.


## GUIDANCE NOTES

### *Effect of this Order:*

(1) A Defendant who is an individual who is ordered not to do something must not do it for himself or in any other way. He must not do it through others acting on his behalf or on his instructions or with his encouragement.

(2) A Defendant which is a corporation and which is ordered not to do something must not do it itself or by its directors, officers, employees, servants or agents in any other way.


## VARIATION OR DISCHARGE OF THIS ORDER

The Defendants (or anyone notified of this Order) may apply to the Court at any time to vary or discharge this Order (or so much of it as affects that person), but anyone wishing to do so must first inform the Claimants' legal representatives in writing at least 2 working days before hand.


## PARTIES OTHER THAN THE CLAIMANT AND DEFENDANTS

(1) *Effect of this Order*

It is Contempt of Court for any person notified of this Order knowingly to assist in or permit a breach of this Order. Any person doing so may be sent to prison, fined or have his assets seized.

(2) *Effect of this Order outside England and Wales*

The terms of this Order do not affect or concern anyone outside the jurisdiction of this Court until it is declared enforceable by or is enforced by a Court in the relevant country and then they are to affect him

only to the extent that they have been declared enforceable or have been enforced UNLESS the person is:

    (i)    a person to whom this Order is addressed or an officer or an agent appointed by power of attorney of that person; or

    (ii)    a person who is subject to the jurisdiction of this Court

and

    (a)    has been given written notice of this Order at his residence or place of business within the jurisdiction of this Court and

    (b)    is able to prevent acts or omissions outside the jurisdiction of this Court which constitute or assist in a breach of the terms of this Order.

## INTERPRETATION OF THIS ORDER

(1)    In this Order where there is more than one Defendant, (unless otherwise stated) references to "the Defendant" means one or all of them.

(2)    A requirement to serve on "the Defendant" means on each of them. However, the Order is effective against any Defendant on whom it is served.

(3)    An Order requiring "the Defendant" to do or not to do anything applies to all Defendants.

## COMMUNICATION WITH THE COURT

All communications to the Court about this Order should be sent to the Commercial Court Clerk, the Listing Office, Room E201, the Royal Courts of Justice, Strand, London WC2A 2LL quoting the case number. The telephone number is (0044) 207 936 6826. The offices are open between 10.00am and 4.30pm Monday to Friday.

## SCHEDULE A

*Witness Statements*

The Claimants relied on the following witness statement:

(1)    First Witness Statement of Nicholas George Parton made on 13 December 2006 made on behalf of the Claimants.

## SCHEDULE B

*Undertakings given to the Court by the Applicants*

(1) If the Court later finds that this Order has caused loss to the Defendants, and decides that the Defendants should be compensated for that loss, the Claimants will comply with any Order the Court makes;

(2) As soon as practicable the Claimants will serve upon the Defendants this order and the witness statement listed under Schedule A;

(3) Anyone notified of this Order will be given a copy of it by the Claimants' legal representatives; and

(4) If for any reason this Order ceases to have effect, the Claimants will forthwith take all reasonable steps to inform, in writing, any person or company to whom they have given notice of this Order, or who they have reasonable grounds for supposing may act upon this Order, that it has ceased to have effect.

Dated this 13th day of December 2006

**<u>2006     NO</u>**
**<u>IN THE HIGH COURT OF JUSTICE</u>**
**<u>QUEEN'S BENCH DIVISION</u>**
**<u>COMMERCIAL COURT</u>**
**<u>IN THE MATTER OF THE ARBITRATION ACT 1996</u>**
**<u>AND IN THE MATTER OF AN ARBITRATION</u>**

Cruiser Shipping Pte Ltd
Universal Navigation Pte Ltd

**<u>Claimants</u>**

-and-

Sundersons Limited
Milan Nigeria Limited
Midland Century Llc

**<u>Defendants</u>**

Jackson Parton
5th Floor
18 Mansell Street
London E1 8AA

Tel:  0207 702 0085
Fax:  0207 702 0858
Email: mail@jacksonparton.com
Ref:  NGP/JFW/4920-7