BLANK ROME, LLP
Attorneys for Defendant MILAN NIGERIA LTD.
Thomas H. Belknap, Jr. (TB-3188)
The Chrysler Building
405 Lexington Ave.
New York, NY 10174-0208
(212) 885-5000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CRUISER SHIPPING PTE LTD. and UNIVERSAL NAVIGATION PTE LTD., | 07 CV 4036 (JGK) |
| Plaintiffs | |
| -against- | |
| SUNDERSONS LTD., MILAN NIGERIA LTD., SIMRAN MEHER LTD. and VALECHHA HOLDINGS LIMITED, | |
| Defendants | |

**DEFENDANT/COUNTERCLAIMANT MILAN NIGERIA LIMITED'S
REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
REQUEST FOR SECURITY ON COUNTERCLAIM**

## PRELIMINARY STATEMENT

Defendant Milan Nigeria Ltd. ("Milan") respectfully submits that Plaintiffs' arguments advanced in their opposition to Milan's motion for countersecurity do not state sufficient "cause" to deny the motion. As such, the motion "must" be granted. Plaintiffs oppose Milan's motion on two principal grounds: (1) that Milan was previously offered security in the form of a Club Letter of Undertaking and so should not be entitled to countersecurity here; and (2) that the counterclaim is "frivolous." Milan respectfully submits that it is plaintiffs' arguments which are frivolous, and in any event they do not state an adequate basis to ignore the clear requirement of Supplemental Admiralty Rule E(7)(a) that a plaintiff "must" provide countersecurity in these circumstances "unless the court, for cause shown, directs otherwise." In short, plaintiffs fail to show "cause," and so Milan's motion should be granted.

## POINT I

### PLAINTIFFS FAIL TO SHOW CAUSE WHY COUNTERSECURITY SHOULD NOT BE ORDERED

Plaintiffs correctly note—as was outlined at pp. 3-4 of Milan's main brief—that a fundamental guiding factor in determining whether "cause" exists to deny a request for countersecurity is the principle that Rule E(7)(a) was intended "to place the parties on an equality as regards security ...." Result Shipping Co. v. Feruzzi Trading USA Inc., 56 F.3d 394, 399-400 (2d Cir. 1995). That factor, of course, it highly relevant here where Plaintiffs have restrained $417,614.40 in respect of their claim, which funds are currently sitting in cash in a bank in New York earning no interest and just waiting for Plaintiffs' claims in London arbitration to be resolved. Milan has asserted a counterclaim in those proceedings and is equally entitled to be secured on its claim. This is precisely what Rule E(7)(a) was intended to accomplish.

2

On the other hand, "the Rule is not intended to impose burdensome costs on a plaintiff that might prevent it from bringing suit." Id. From this principle, Plaintiffs suggest that Milan's application for countersecurity is merely an "afterthought" which is "motivated solely for the purpose of deterring Plaintiffs' [sic] from availing themselves of their maritime attachment remedies ...." (Br. 5). In the first place, Plaintiffs' characterization of Milan's "motivation" is pure speculation and is, incidentally, incorrect. But in any event, Plaintiffs entirely miss the point. There is nothing in Milan's motion which has any impact whatsoever upon Plaintiffs ability "to bring suit." Indeed, it has already done so in the proper forum—*i.e.*, London arbitration. And as to Plaintiffs' suggestion that Milan's motion somehow threatens to interfere with their "maritime attachment remedies," the Admiralty Rules are explicit that the right of attachment comes burdened with a corresponding obligation to post countersecurity on a counterclaim, so Plaintiffs cannot seriously be heard to contend they are somehow prejudiced— or even surprised—by Milan's application here.

Plaintiffs' position might carry some weight if the claim they were pursuing was an *in rem* claim against a vessel or a claim which required arrest or attachment of property in order to obtain jurisdiction (*i.e.*, as opposed to simply obtaining security, which is the sole purpose of plaintiffs' claim in this action). In such case, some courts have recognized that a plaintiff might have little choice but to arrest or attach property in order to commence its action and can be prejudiced if the defendant can thwart such a suit by asserting a large counterclaim for which the plaintiff cannot afford to post countersecurity. See e.g. Titan Navigation, Inc. v. Timsco, Inc., 808 F.2d 400, 403-04 (5th Cir. 1987)(recognizing that seaman bringing *in rem* action or party who is financially unable to post countersecurity should not be effectively barred from pursuing

3

claim simply by virtue of its inability to post countersecurity)(citing The Beaumont, 8 F.2d 599,

601 (4th Cir. 1925)). As the Titan court observed:

> We can readily contemplate instances when permitting one party to
> enjoy security without requiring countersecurity could result in
> injustice. *For example, when no maritime lien or statutory right is
> involved, as in an action commenced quasi in rem under Rule B,
> there usually would be little or no reason to permit a complainant
> to enjoy unilateral security rights*, absent strong justification—or
> in the terms of Rule E(7), "cause shown." On the other hand, the
> court should not lightly order countersecurity if to do so would
> diminish the utility of the maritime liens established by Congress
> or long-standing precedents.

Id. at 405 (emphasis added). In the present case, Plaintiffs' claim is strictly *in personam* and the

merits are currently pending in London arbitration. The New York proceedings are purely for

seeking security and will have no bearing whatsoever on the merits of the dispute. Moreover,

there has been no suggestion that plaintiffs are financially unable to put up the requisite

countersecurity.

As to Plaintiffs' contention that Milan should not be permitted security now when it

refused to accept an insurer's letter of undertaking back when the claim first arose is a non-

starter. The claim was settled—or so Milan believed—and so no security was necessary at that

time. Now, however, notwithstanding the settlement Plaintiff's have commenced arbitration and

attached substantial amount of cash. Milan is entitled to be placed on equal footing with respect

to its counterclaim.

In sum, Plaintiffs have failed to show any "cause" whatsoever why the ordinary

requirement of Rule E(7)(a) should not be followed and why Plaintiffs should not be required to

post countersecurity in the full amount of Milan's counterclaim. Accordingly, Milan's motion

should be granted.

4

## POINT II

### PLAINTIFFS' CONTENTION THAT MILAN'S COUNTERCLAIM IS FRIVOLOUS IS WITHOUT MERIT AND SHOULD BE REJECTED

Plaintiffs further contend that no countersecurity should be required because Milan's counterclaim is "frivolous." This contention is baseless.

In a nutshell, Plaintiffs' claims in the arbitration seek to undo a settlement that was reached between the parties in respect of certain cargo damage and shortage claims relating to cargo carried aboard Plaintiffs' ship. Milan opposes this claim but contends that to the extent Plaintiffs are successful in reneging on the settlement then Milan should nevertheless be entitled to recover for the underlying cargo damage and loss. This hardly seems controversial, and in any event is certainly not frivolous.

Plaintiffs make much of the fact that Milan's calculation of its counterclaim has fluctuated somewhat over time; however, this is not uncommon as the facts are developed and legal advice is refined about how the claim should properly be calculated. Importantly, as plaintiffs' implicitly concede, the fundamental nature of the claim has never changed. Plaintiffs contend (Br. 9-10) that they should be entitled to a $70,000 credit for the amount they have already paid Milan; however, this payment is already accounted for in Milan's amended counterclaim filed in the arbitration, (See Belknap Aff. Ex. D, ¶ 19), and so is also already fully accounted for in Milan's calculation of its claim for countersecurity of $158,472.73. Indeed, this is one of the principal reasons Milan made its amended counterclaim in the first place: to include an accounting for this payment already received.

Plaintiffs assert a number of arguments concerning the merits of Milan's claims, (Br. 6-7), but of course it is not for this Court to consider this kind of evidence in weighing the propriety of the counterclaim—particularly where the merits of the claims are subject to London

5

arbitration—any more than it may analyze the merits of the Plaintiffs' claims as alleged in their complaint. As the Court can appreciate, Milan itself feels very strongly that Plaintiffs' claims in the London arbitration are totally baseless and will ultimately fail. It accepts, however, as must Plaintiffs, that those disputes are not for this Court but must be reserved for arbitration.

### POINT III

### PLAINTIFFS' CONTENTION THAT MILAN SHOULD BE REQUIRED TO ACCEPT A CLUB LOU SHOULD BE REJECTED

While Plaintiffs have $417,614.40 of <u>cash</u> under attachment in New York, they contend that Milan should be forced by the Court to accept a letter of undertaking from Plaintiffs' protection and indemnity insurers. This hardly represents the "equality" of footing which is the principal purpose of Rule E(7)(a), and nothing in that rule suggests that the Court may excuse a plaintiff from posting countersecurity in the usual manner—*i.e.*, cash or bond from an approved surety. Indeed, strictly speaking a Club LOU is not security at all but merely an unsecured promise by an insurer, and the Courts traditionally have refused to force a litigant to accept an LOU as security where it is not willing to do so. In <u>Thyssen, Inc. v. M/V SENA DENIZ</u>, 2000 U.S. Dist. LEXIS 17511 (E.D. La. 2000), for instance, a vessel was arrested and the owner moved for an order forcing the plaintiff to accept a letter of undertaking from the "UK Club," arguably the biggest and most well-respected protection and indemnity insurer in the world. In rejecting the shipowner's motion, the court acknowledged that it was customary for club LOUs to be issued in these circumstances but concluded that courts "ordinarily do not accept a letter of undertaking by an unapproved surety unless the other side agrees to accept it." <u>Id</u>. at *2.

In the present case, the insurer at issue (the "South of England P&I Club") is new and unknown, is not a member of the "International Group" of P&I insurers who insure nearly 90%

6

of the world's tonnage and mutually insure each other for many kinds of risks,[1] and, like the UK Club, is not an approved surety in this district.[2] As such, it can in no way be suggested that a letter of undertaking from the South of England is the functional equivalent to the cash or bond which must ordinarily be posted pursuant to Rule E(7)(a).

As with Plaintiffs' other claims under the charter, their contention that Milan breached the charter by failing to accept a LOU in the first place goes directly to the merits of the dispute and is not properly before this Court. In any event, Plaintiffs contentions about what Milan should have done at the time the underlying dispute arose (*i.e.*, when the settlement which Plaintiffs now seek to undo was reached) are quite different from the question of what form of countersecurity Plaintiffs should be required to post now that they have attached more than $400,000 of Milan's <u>cash</u> as security for their claims. In the circumstances, Plaintiffs should be required to post security of equal strength—*i.e.*, cash or a bond from an accepted surety—as *quid pro quo* for maintaining their pre-judgment restraint of a substantial amount of Milan's funds here in New York. This is only fair and equitable.

---

[1] Information about the International Group, including a listing of its members, can be found here: http://www.igpandi.org/Home.

[2] A profile of the South of England P & I Club can be found at: http://www.soem-pandi.com/soem-pandi/TheAssociation.htm. There, it is reported that the club was formed only in 2004 and is presented as an "alternative" to the International Group. It is, in short, small, untested, and relatively unknown in the maritime industry.

128426.00601/6596514v.1

## CONCLUSION

For the foregoing reasons, Plaintiffs should be ordered to post countersecurity of $158,472.73 in the form of cash, a bond or other acceptable form to Defendant Milan as security in respect of its counterclaim asserted in this matter or, if suitable countersecurity is not posted within ten days of entry of an order of this Court, then Plaintiffs' attachment should be vacated and this action dismissed. This Court should further grant defendant Milan such other and further relief as may be just and equitable.

Dated: New York, NY
      December 7, 2007

                Respectfully submitted,
                BLANK ROME, LLP
                Attorneys for Defendant/Counterclaim-Plaintiff
                MILAN NIGERIA LIMITED

                By_____
                   Thomas H. Belknap, Jr. (TB 3188)
                The Chrysler Building
                405 Lexington Ave.
                New York, NY  10174-0208
                (212) 885-5000

8